TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, v. BERGEN BOULEVARD HOLDING CO., A NEW JERSEY CORPORATION, AND STATE BOARD OF TAX APPEALS, DEFENDANTS-RESPONDENTS.

Submitted October 26, 1945—Decided January 24, 1946.

For the prosecutor-appellant, *Nicholas S. Schloeder.*

For the defendant-respondent Bergen Boulevard Holding Co., *Edward P. Stout.*

The opinion of the court was delivered by

CASE, J. There are two appeals. They involve the same parties, concern adjoining properties, turn upon the same legal points, and are argued together. A discussion of the first case will suffice also for the second.

A fifty-family apartment house known as 9201-07 Hudson Boulevard in the Township of North Bergen, owned by Bergen Boulevard Holding Co., was assessed for 1943 taxes at $25,000 for land and $145,000 for improvements. The county board of taxation, on appeal by the taxpayer, sustained the assessment on land and reduced the assessment on the building to $135,000. On cross-appeals by both taxpayer and the municipality the State Board of Tax Appeals, after taking proofs, reduced the assessments to $20,900 on land and $115,000 on building.

The township went, on *certiorari,* to the Supreme Court which, deeming the question to be one purely of fact, affirmed the state board. The appeal here is by the township from the Supreme Court judgment. Unless a legal defect exists this court does not disturb the finding of the Supreme Court in *certiorari* on a tax assessment. *Moran* v. *Jersey City,* 58 *N. J. L.* 653; *Yellow Pine Co.* v. *Board of Assessors,* 72 *Id.* 182; *Hoboken Ferry Co.* v. *State Board,* 103 *Id.* 148. The question, therefore, is whether legal error is disclosed.

We think that error occurred in this, that either there was not evidence to sustain the reductions granted by the state board and affirmed by the Supreme Court, or those tribunals

gave evidential force to proofs that grounded in unlawful standards.

The taxpayer bought the property from the Prudential Insurance Company on August 18th, 1943, for $185,000 of which $27,750 was in cash and $157,250 was upon mortgage. The testimony was taken before the state board in February of 1944. The taxpayer's expert witness began his testimony with these questions and answers:

"*Q.* What in your opinion would this property have sold for in money as of the assessing date, at a fair sale by private contract? *A.* My value on this property is $135,000, $20,000 for the land, $115,000 for the improvements.

"*Q.* That is in your opinion what it would have sold for in money? *A.* Yes."

But it developed that what the witness meant when he said "money" was cash, or, as he expressed it, "coin of the realm." The opinion of the witness was not addressed exclusively to the significance of the sale in this case: it was an interpretation of the law as applied to all instances where a considerable mortgage is accepted in part payment, as is clearly shown by the following question and answer:

"*Q.* In other words, if you sell property for cash, you always get less money than when you sell it for a small payment in cash and the rest in mortgage? *A.* That is undisputed."

It is also further emphasized by the following elicitation from the witness. This question, framed in the phraseology of the statute, was asked on cross-examination:

"*Q.* And what, in your opinion, would this property sell for at a fair and *bona fide* sale by private contract as of the assessing date?"

That question was strenuously opposed on behalf of the taxpayer because it did not specify the sale "as one for money." The question was nevertheless allowed, and the ruling is not under dispute. This testimony followed:

"*A.* The answer on your basis is best revealed by the sale on terms as indicated in this transaction. *Q.* For $180,000? *A.* As for a sale on terms, that represents a good sale. There is nobody can dispute that there was a meeting of the minds,

and there was an actual closing, but to cash that sale into coin of the realm, I have reduced it into my figures." The witness, adhering to his theory, eliminated the actual sale figures as an element of proof on statutory sale value by taking therefrom the sum of. $31,500 or approximately twenty per centum of the $157,250 mortgage. The witness was entitled to entertain his opinion of the sale value of the property and to testify thereto; he was not entitled to recast the law of the state as to what constitutes sale value and to influence the decision by opinion evidence based on that mistaken conception of the law. The limitation of the word "money" as used in our cases to the cash passed at the closing of title is not, we think, sound. The word "money" was used as of a money transaction in contradistinction to barter—the trading of properties. This transaction was a money transaction; the property was purchased for so much money and a secured evidence of debt was accepted against the deferred payment of a part of that money.

The statutory provision, *R. S.* 54:4–23, is: "The assessor shall * * * determine the full and fair value * * * at such price as, in his judgment, it would sell for at a fair and *bona fide* sale by private contract * * *." There is no mention of money in the statute or in the pertinent constitutional provision, article 4, section 7, paragraph 12, which directs that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." It was said in *New Jersey Bell Telephone Co.* v. *Newark,* 118 *N. J. L.* 490, a Supreme Court opinion adopted by this court on affirmance, 124·*Id.* 451:

"The interpretation generally given to the expression 'true value,' as used in the constitution and tax laws, is that the valuation for taxation should be on the price which the assessor believes could be obtained for the property, in money, at a fair sale, as of the first day of October of the year in which the assessment was made, between a willing seller and a willing buyer; that is, one not obliged to sell dealing with one not obliged to buy. * * * This would seem to indicate that the legislature conceived such a selling price to be the

guiding indicia of true value. It is also well settled that there is a presumption that the assessment made by the proper authority is correct."

Those observations were made to assist in the interpretation of, and not, of course, to contravene, the fundamental and statutory law.

A contracts with B to purchase on a named day a real estate property for the price of $10,000 payable $3,000 in cash on the day of closing and $7,000 by bond and mortgage dated and delivered on that day and payable with interest one year thereafter. The transaction closes as agreed and one year thereafter A pays to B the principal of the mortgage with accruals. What price did A pay for the property? In our opinion the obvious answer, and the legally sound view, is that he paid $10,000 and that he paid that price in money. To say that the price at which a property is sold is in fact not the price unless it is wholly paid, *instanter,* in coin of the realm is contrary to the common conception of what constitutes a sale price and is, in our view, contrary to the intent of the statute. And to assume, as a matter of law, that every unpaid mortgage, although *bona fide* and not under attack, is worth less than its face, or is to be discounted at or before payment, would inject still further confusion into the fixing of values for assessment purposes. Therefore, to the extent that the taxpayer's case against the assessor's figures rested upon proof of sale price, a guiding *indicium* of true value, it failed.

The answers to the last quoted questions leave no room for doubt that the witness considered the figure at which the transaction closed to be a fair sale price if the incidents of the sale were such as to constitute the sale a money transaction; and, as we have said, we entertain the affirmative view on that hypothesis. The taxpayer's expert made no computation based upon the reproduction value of the building less obsolescence and depreciation. It was in proof from the township's expert, a contractor who had built the structure in 1929, that the original cost of building and land was about $300,000; that the replacement value of the building, as

new, less depreciation, was $175,400, and that the value of the land was $27,000, making a total valuation on that basis of $202,400; and that a combination of the results so reached with an analysis of the sale figure, the capitalization of earnings and the condition of the building on the assessing date gave a final figure of $175,000 as the fair value of the entire property.

The only ground of attack, other than by the erroneous analysis of the sale figures, made by the taxpayer upon the assessor's valuation was a calculation based upon a capitalization of the rentals and the items chargeable against those receipts—in other words, an estimate of the value of the property based upon what the property produced net to the owner.

The constitutional requirement is that property is to be assessed for taxation at its true value. The statutory criterion for determining that value is the consideration of the market value at a fair and *bona fide* sale by private contract. The yearly rental of the premises may also be taken into consideration as an element in the ascertainment of true value where the property is so situated that the yearly rental reflects upon true value; but this is one of several adventitious circumstances which are simply adjuncts for ascertaining the true value by which the taxes are to be levied. We do not disturb the factual finding, which we believe to be implicit in the determination below, that the yearly rental of the present property does reflect upon true value; and we recognize the legal propriety of considering that fact as an adjunct, or an element, in ascertaining true value for assessment purposes. But income itself is not the criterion of value for the purpose of taxation. *Hurd* v. *Cook Collector,* 60 *N. J. L.* 70. It is an element to be taken into consideration where a property is so situated that the yearly rental reflects upon its true value. *Gibbs* v. *State Board of Taxes,* 101 *Id.* 371. It is not conclusive. *Prudential Insurance Co.* v. *Division of Tax Appeals,* 133 *Id.* 153.

Appellant further attacks the details of the method by which the witness used the figures of receipts and disburse-

ments to arrive at fair value. But we discover nothing therein which discloses an error in law as distinguished from an alleged faulty appraisal of facts.

We are unable to discover factual support for the finding of value made by the Supreme Court and the state board unless those tribunals either excluded from their field of decision the element of sale price and relied exclusively, and therefore erroneously, upon the single element of rentals, with the ramifications thereof, or based their findings in part upon the taxpayer's proof of price grounded in a mistaken legal principle. Under either condition there was error.

We think that the proofs in the case should be reviewed by the Supreme Court in the light of our opinion and a new finding made thereon. The cases will, therefore, be remanded to the Supreme Court for that purpose. *Gibbs* v. *State Board of Taxes, supra.*

*For affirmance*—RAFFERTY, DILL. JJ. 2.

*For remand*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WELLS, FREUND, McGEEHAN, JJ. 11.