AETNA LIFE INSURANCE CO., A CORPORATION, PLAIN-
TIFF-APPELLANT, v. CITY OF NEWARK, DEFENDANT-
RESPONDENT.

AETNA LIFE INSURANCE CO., A CORPORATION, PLAIN-
TIFF-APPELLANT, v. CITY OF NEWARK, DEFENDANT-
RESPONDENT.

Argued May 19, 1952—Decided June 16, 1952.

*Mr. Herbert J. Hannoch* argued the cause for the appellant (*Messrs. Hannoch & Lasser,* attorneys).

*Mr. Vincent J. Casale* argued the cause for the respondent (*Mr. Charles Handler,* attorney).

The opinion of the court was delivered by
BURLING, J.   Aetna Life Insurance Co., a corporation (hereinafter called the plaintiff) has appealed under *Rule*

3 :81–8 from two judgments of the Division of Tax Appeals affirming assessments made by the taxing authorities of the City of Newark (hereinafter called the defendant) in this State, on real property situate in the City of Newark. The appeals were addressed to the Superior Court, Appellate Division, but prior to hearing there we allowed certification upon our own motion.

The appeals in this case concern assessments made for the tax years 1949 and 1950 upon what is commonly known as the Bamberger Department Store, consisting of land and improvements lying in the rectangular area formed by Market, Halsey, Washington and Bank Streets in the City of Newark, exclusive of that portion of the entire store area located at the northwest corner of Market and Halsey Streets, known locally as the Weiler property—the store area includes both the property subject to the assessments from which these appeals stem and the Weiler property. Plaintiff acquired the entire property exclusive of the Weiler portion from the store operating concern, L. Bamberger & Co. (hereinafter called Bamberger) in December, 1945, and immediately thereafter leased to Bamberger the same premises for a term of 22 years with renewal options for subsequent periods which if invoked will extend the period of occupancy by Bamberger thereunder to the year 2034. The lease gave to Bamberger many of the rights and laid upon it many of the duties incidental ordinarily to ownership for the period of its leasehold. The physical structures constituting the improvements were erected in three parts, the first in 1912-13, the second in 1923-24 and the final portion in 1928-29. Subsequently modernization and reconstruction of the premises has occurred in several respects, and the lessee conducts therein an extensive merchandising business. `

The plaintiff's property which constitutes a considerable portion of the above described Bamberger store premises was assessed for the tax year 1949 at a valuation of $3,018,800 for land and $5,549,700 for improvements, and for the tax year 1950 at the identical figures. The plaintiff appealed

from both assessments to the Essex County Board of Taxation. The county board dismissed the appeals and the plaintiff thereupon pursued its statutory right of appeal to the Division of Tax Appeals, Department of the Treasury, State of New Jersey. The appeals were consolidated and hearings were had on the consolidated appeals before the Division of Tax Appeals. On November 23, 1951, the Division of Tax Appeals entered judgments on both appeals, affirming the assessments at the amount levied by the defendant and dismissing the appeals. The plaintiff then appealed both said judgments to the Superior Court, Appellate Division, which on January 7, 1952, ordered the appeals consolidated. Prior to hearing there we allowed certification of the consolidated appeals upon our own motion, as hereinbefore stated.

The questions involved in these appeals are: (1) whether the decision of this court in L. Bamberger & Co. v. Division of Tax Appeals, 1 N. J. 151 (1948) is dispositive of these appeals; (2) whether the Division of Tax Appeals properly applied the law relating to presumption of correctness of tax assessments; (3) whether the Division of Tax Appeals properly determined the probative value of plaintiff's proof (in various categories); and (4) whether the Division of Tax Appeals erred in valuing the land, independent of the improvements, upon proofs which plaintiff alleges were grounded in unlawful standards.

On the first question, it is settled that tax litigation should not be prolonged and should be brought to an end with definiteness if possible, but it is also settled that each annual assessment of property for taxation is a separate entity, distinct from the assessment of the previous or subsequent year. Hackensack Water Co. v. Division of Tax Appeals, 2 N. J. 157, 162 (1949). However tax history is evidential and is often resorted to in order to help clarify and explain the issues presented in controversies of this nature. See City of Jersey City v. Lehigh Valley Railroad, 9 N. J. 362 (1952); Hackensack Water Co. v. State Bd.

*Tax Appeals,* 129 *N. J. L.* 535, 539 (*Sup. Ct.* 1943), affirmed 130 *N. J. L.* 483 (*E. & A.* 1943); *Koch v. Jersey City,* 118 *N. J. L.* 85, 88 (*Sup. Ct.* 1937), affirmed 119 *N. J. L.* 432 (*E. & A.* 1938). And where the factual situation and questions presented are the same, the prior holding of the court in a case of this nature may be controlling. *Cf. City of Jersey City v. Lehigh Valley Railroad, supra.* In the present case, the questions involved include matters not involved in *L. Bamberger & Co. v. Division of Tax Appeals, supra,* and therefore our former decision is not completely controlling although it governs some aspects of the examination of the points argued here.

### Adjective.

■ Appellate review in these cases is controlled by the rules. *Rule* 3:81–13 relating to the appellate courts' power to review facts in proceedings in lieu of prerogative writs, provides that the reviewing court "shall have power to review the facts and make independent findings thereon, which power may be exercised by it to such extent as the interests of justice may require," and the pertinent portion of *Rule* 1:2–20(*a*) relating to appellate review on facts generally, provides: "On a review of any cause involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The duty of the appellate court under these rules in this class of cases is to review the evidence and render such decision as it deems proper in the light of that evidence but not to disturb the judgment of the Division of Tax Appeals unless the evidence is persuasive that the administrative tribunal erred.

### Merits.

■ On the merits in this case the first question involved is whether the Division of Tax Appeals correctly applied

the principles of law relating to the presumption of correctness of an assessment for tax purposes and the burden of proof in reviewing the assessments. The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. *L. Bamberger & Co. v. Division of Tax Appeals, supra* (1 *N. J.*, at *p.* 159). And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. *Riverview Gardens v. North Arlington Borough,* 9 *N. J.* 167, 175 (1952). In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption. *Central R. R. Co. of N. J. v. State Tax Dept.,* 112 *N. J. L.* 5, 8 (*E. & A.* 1933).

The next questions involved include those relating to the determination of the Division of Tax Appeals as to the true value of the plaintiff's property, including the sufficiency and competency, or probative value, of the plaintiff's proofs.

Of the formulae for determination of "fair value" upon which evidence was adduced or proffered by the plaintiff in the proceedings before the Division of Tax Appeals, was one relating to computation of value of the improvements on the land by a method of capitalization of actual current and prospective rental income under the lease between Aetna (owner) and L. Bamberger & Co. (lessee). Another formula was designed to prove "fair value" of the subject property by a method of capitalization of income based upon a percentage of gross sales, computed by application in part of a real estate expense factor derived from statistical analyses known as the "Harvard Studies." The plaintiff contends that the Division of Tax Appeals erred in holding that plaintiff failed to carry the burden of proof, arguing that the

Division improperly disregarded the plaintiff's "uncontroverted" evidence of true value asserted on these two bases.

While it is necessary to treat these two classifications of evidence separately in determining their probative value, which in this case we find to be inconsequential, in general we recognize and reaffirm the law of this State that rental income may be a relevant factor in reaching true value of real estate for tax assessment purposes. *Hasbrouck Heights v. State Board of Tax Appeals,* 125 *N. J. L.* 617 (*Sup. Ct.* 1941); *Prudential Ins., &c., v. Division of Tax Appeals,* 133 *N. J. L.* 153, 154–155 (*Sup. Ct.* 1945).

But mathematical calculations in appraisals, though made in the best of faith, can lead to divergent results and should be closely scrutinized. *Kearny v. Division of Tax Appeals,* 137 *N. J. L.* 634, 636, 637 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 409 (1949).

Upon the actual rental basis, the plaintiff introduced experts' appraisals and supporting testimony based upon the existing long term lease between the plaintiff and its lessee, Bamberger. Under the circumstances of this case, the lease in question is a net rental lease. In other words, the lessee, Bamberger, has practically all the duties and responsibilities of an owner, by paying in addition to a graduated net rental over the 22-year term of the lease, and as additional rental real estate taxes, assessments, water rates, meter and other governmental charges which occur during the term of the lease, and also has the duty to keep the improvements in good and substantial order and repair. See *L. Bamberger & Co. v. Division of Tax Appeals, supra* (1 *N. J.,* at *p.* 154).

The plaintiff's experts reached their valuations by a capitalization formula including only the net rental to the owner. When it is recalled that under the statute the full and fair value of the property must be based upon such price as in the opinion of the assessor "it would sell for at a fair and *bona fide* sale by private contract," *Riverview Gardens v. North Arlington Borough, supra* (9 *N. J.,* at *p.* 175), it must be seen that this basis as asserted by the plaintiff under

the circumstances of this case is not reliable. A purchaser of real property ordinarily understands that he will pay real estate taxes thereon and of course will expect to receive in addition a fair income (if he purchases to hold the property as an investment for rental to others). Compare *Griffith v. Newark*, 125 *N. J. L.* 57 *(Sup. Ct.* 1940); *People v. Robinson*, 406 *Ill.* 280, 94 *N. E. 2d* 151, 154 *(Sup. Ct.* 1950); *People ex rel. Szerlip v. Goldfogle*, 118 *Misc.* 8, 192 *N. Y. S.* 210 *(N. Y. Sup. Ct.* 1922).

When the actual taxes on this property (which are "additional rentals" to Aetna under the lease and would be included in an investor's study of gross rentals) are considered, it results approximately in a doubling of the rental basis for capitalization purposes. On this basis the value would exceed the highest appraisals introduced in evidence. Such a gross income multiplier formula, of course, is unreliable under the circumstances of this case, for here the gross income includes a variable factor, the existing tax, which is in turn the end result sought to be determined in these proceedings. The theory might be applicable under other circumstances, for instance where a property has a gross rental history which does not *rest* on the taxes actually paid. However, even in this case the theory does indicate a weakness in the plaintiff's appraisals for it demonstrates that a purchaser might be well pleased to acquire the property for investment purposes and it indicates the discrepancy between the net rental capitalization formula asserted under the lease in this case and the probable value of the property on a properly applied income capitalization formula.

Upon the basis of gross sales percentage other evidence was submitted by the plaintiff. The foundation for this evidence was the introduction of evidence of Bamberger's net sales, which over the period (1947-1950) on which plaintiff's appraisal was based ranged from $52,946,000 (1949) to $57,011,000 (1948), averaged by plaintiff's witnesses to $55,308,000 per year, and calculation by application of a multiplier factor derived from the "Harvard Studies." The

latter consist of a survey undertaken by the Harvard Bureau of Business Research with the financial cooperation and assistance of the National Retail Dry Goods Association. As related to this case the studies introduced concerned a real estate operating cost comparison representing rents, real estate taxes, insurance, depreciation and other rents (such as warehouse rents, taxes and insurance), and derivation of a percentage of owned department sales. The application of this formula was designed to show the rental value of the subject property for capitalization purposes to determine full and fair value. The plaintiff's exhibits, the product of the appraisers who testified in its behalf, include deductions from the real estate operating cost computation derived from application of the "Harvard Studies" percentage factor, of various items of real estate expense, including rental of the Weiler portion of the principal store property, other store properties used by Bamberger, two specific warehouses and other warehousing expenses and insurance. There was no endeavor, however, to show the relative proportions of the value of these items and of the subject (Aetna) property in the production of the sales upon which the computations were grounded. In the absence of such proof little consideration should be given to this formula, for in the event that the proportions of value to the business are not equal it is evident that the balance of the cost factor remaining after deduction of the real estate cost of other properties may well be unrelated to the true value of the Aetna property. Further, there is no proof that the real estate costs of these other properties are reasonable. If not, if they should be the result of factors unrelated to the value of the properties, then full deduction thereof from the basic cost study figure would be unjustified in the effort to evaluate the Aetna property on this basis.

Further, there is judicial authority to support a complete rejection of this type of evidence as a test for full and fair value of property for assessment purposes. For instance, in *Somers v. Meriden,* 119 *Conn.* 5, 174 *A.* 184, 95 *A. L. R.* 435, 442 (*Sup. Ct. Err.* 1934), it was held that evidence of

financial results of the business conducted by the lessees was properly excluded inasmuch as profits or losses of a business are so commonly dependent upon causes other than the value of the premises in which it is conducted that, except in some instances as to public utilities, they are not evidence of that value. In *Assessors of Quincy v. Boston Consol. Gas Co.,* 309 *Mass.* 60, 34 *N. E. 2d* 623, 626 (*Sup. Jud. Ct.* 1941), it was held that "the general rule is that the profits from a business located upon the land are not a fair measure of the value of the land because the financial returns from a commercial undertaking are dependent upon so many material factors having no real relation to the land itself that the profits cannot be said to be derived from the land." The rule in New York State is to the same effect. *People v. Chambers,* 298 *N. Y.* 372, 83 *N. E. 2d* 839, 840 (*Ct. App.* 1949). In this State this rule has not been defined in detail, but examples of its application in general have occurred. See *Hurd v. Cook,* 60 *N. J. L.* 70 (*Sup. Ct.* 1897); *Griffith v. Newark,* 125 *N. J. L.* 57 (*Sup. Ct.* 1940). In the present case the theory asserted is a formula based on sales volume and therefore is subject to the variables of goodwill and management practices which are factors entirely foreign to the true value of the real estate as ·such. For this reason the evidence adduced in this category was neither competent nor sufficient to establish the fair and full value of the property.

█ Comparable to the foregoing is the testimony of Mr. Cohn. Significant in his testimony is the fact that his opinion as to the price a willing purchaser would pay for the subject property, namely $5,000,000, appears to have been influenced by his consideration of the large sums of money that would be required to operate the store and to create "the impulse to buy." And he testified that the fixtures in the store alone would be worth $5,000,000. The plaintiff asserts that the Division of Tax Appeals erred in excluding testimony sought to be elicited from Mr. Cohn as to the fair rental value of the subject property. This testimony was excluded on the ground that it was not compe-

tent in view of the fact that there is an outstanding lease which fixes the rental of the property. Under the circumstances of this case it does not appear that this was harmful error. If he were competent to testify as an expert, and his competency in this respect is not questioned by the defendant, his testimony would have had to result in a conclusion as to the full and fair value of the property, whatever the formula he may have used. This conclusion is in the evidence, *viz.*, $5,000,000.

The further point under this question involved is whether the lease in this case was of evidential value as a "condition" in which the owner holds the land. It is settled that property to be assessed is to be taken and valued in the actual condition in which the owner holds it, *State v. State Board of Tax Appeals,* 134 N. J. L. 34, 43. (*Sup. Ct.* 1946), and we may assume for the purpose of argument that a long term lease may be a "condition" in which an owner holds land. However, application of the theory in this case works to the support of the assessment, for the *gross* rental value of the property as subject to the lease as above discussed is indicative of a considerably higher value of the property than the plaintiff asserts, plaintiff relying on the net rental. Further the arbitrary figures set by the terms of the lease for valuation of the land and improvements as between vendor and vendee in the event of the occurrence of a contingency of condemnation in itself indicates (as it provides for the payment to the lessee of the balance of any condemnation award *over* those arbitrary values) that the plaintiff and Bamberger did not intend those values to represent the fair and full value of the premises. In addition, the values expressed in the lease represent a repayment of principal to the owner, *i. e.*, they represent the sales price less depreciation and obsolescence percentage agreed upon between the parties, and do not include the rental value of the property. This has been covered *ante.* We are of the opinion that the Division of Tax Appeals did not err in its determination as to the proba-

tive value of the lease as a "condition" in which the owner holds the property under the circumstances of this case.

The plaintiff argues that the Division of Tax Appeals committed palpable error in concluding that plaintiff failed to carry the burden of proof with respect to sound value of the building (reproduction cost, depreciated). The plaintiff argues that the proofs of witnesses for both the owner and defendant were substantially identical with the exception of one factor involved in plaintiff's appraisal on this basis. This factor was the assertion of an economic obsolescence factor of 25 per cent (asserted as distinguishable from the allowed functional obsolescence factor). The evidence introduced as to the effect that 25 per cent of the space in the structure was waste space. The defendant argues that the testimony clearly shows that the so-called waste space is used by Bamberger as an ice cream factory, deep-freeze, bakery, electrical and carpentry shop, fur storage vaults and reserve space, and that any obsolescence of this space is included in the functional obsolescence deduction allowed in the experts' analyses. The evidence supports the defendant's argument in this respect and we find no palpable error on the part of the Division of Tax Appeals in the exclusion of this factor.

On the matter of proof of comparable sales, which was introduced in relation to the value of the land as distinguished from the building, plaintiff contends that the Division of Tax Appeals gave evidential value to proofs grounded in unlawful standards. The gist of the plaintiff's argument is that the defendant's appraiser erred in applying a rate of $7,000 per front foot along the entire Market Street frontage of the property, whereas, it is asserted, a graduated scale of value for this frontage should have been applied. Under the circumstances of this case we find no merit in the plaintiff's contention in this respect.

The plaintiff also asserts that the Division of Tax Appeals failed to give probative value to the plaintiff's book value of the property. Under all the facts of this case, we find no merit in the plaintiff's contention. It is also to be noted that the

tax history of this property, while not conclusive, is evidential and lends support to the judgments of the Division of Tax Appeals. *Cf. L. Bamberger & Co. v. Division of Tax Appeals, supra* (1 *N. J.,* at *p.* 147).

Finally, the plaintiff in its questions involved asserts that it has been deprived of its constitutional right of due process; in this respect the plaintiff argues that the Division's determination that plaintiff failed to carry its burden of proof is a denial of due process. Merely to state this contention requires recognition of its lack of merit.

### CONCLUSION.

The evidence in these cases supports the determination of the Division of Tax Appeals, although in some instances as hereinbefore indicated its conclusions are supportable upon reasons other than those advanced by it.

For the reasons stated in this opinion the judgments of the Division of Tax Appeals, consolidated for argument on these appeals, are affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.