54 N.J. Super. 242 (1959)
148 A.2d 643
BOROUGH OF HASBROUCK HEIGHTS, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DIVISION OF TAX APPEALS, STATE OF NEW JERSEY, GRAND VIEW GARDENS, INC., A CORPORATION OF NEW JERSEY AND GRAND VIEW HOMES, INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1959.
Decided February 25, 1959.
*245 Before Judges PRICE, SCHETTINO and HALL.
Mr. Ralph W. Chandless argued the cause for plaintiff-appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Theodore I. Botter, Deputy Attorney General, argued the cause for defendant-respondent Division of Tax Appeals (Mr. David D. Furman, Attorney General of New Jersey, attorney).
Mr. Herbert A. Chary argued the cause for defendants-respondents Grand View Gardens, Inc., and Grand View Homes, Inc.
The opinion of the court was delivered by SCHETTINO, J.A.D.
By our unreported per curiam opinion filed February 14, 1958 we retained this appeal and, for the second time, remanded the cause to the Division of Tax Appeals for a hearing in conformity with that opinion and for further consideration and determination by the Division. In order to focus the issues we repeat the opinion
*246 "The Borough of Hasbrouck Heights appeals from judgments of the Division of Tax Appeals with respect to the assessments for 1954 on garden apartments at 441 Boulevard and 463 Boulevard in that municipality. The borough had assessed these two apartment houses, exclusive of the land, at $55,000 and $70,000 respectively; the county board of taxation had reduced the assessments to $52,000 and $57,000 respectively. The borough then appealed, and the Division affirmed. When the case first came before us, we, citing Fifth Street Pier Corporation v. City of Hoboken, 22 N.J. 326 (1956) and other cases, remanded it to the Division.
"The taxpayers, Grand View Gardens, Inc. and Grand View Homes, Inc., in their petitions of appeal to the county board, had charged the borough, inter alia, with discrimination, stating that their properties were being `assessed at (a) higher rate than other residential property in the Borough * * *.' This constitutes the principal issue in the case. At the hearing in the Division, the borough called as its witness William J. Schwenn, a real estate appraiser, who valued these apartment houses, exclusive of the land, at $148,000 and $171,000 respectively (we are not concerned with the assessments on the land). The taxpayers then called a member of the borough's board of assessors, who testified that the borough deliberately assessed all properties in the municipality at 30 to 33-1/3% of the true value. If one multiplies these percentages with Schwenn's valuations of $148,000 and $171,000 respectively, one finds that on the basis of these figures, the assessments should not have exceeded $49,333 and $57,000 respectively. The Division accordingly rejected the borough's demand for an increase of the assessments of $52,000 and $57,000 imposed by the county board. In effect, it found that an increase would have been discriminatory as against the taxpayers.
"The borough now contends, inter alia, that Schwenn's figures of $148,000 and $171,000, above mentioned, were intended to represent only 60% of true value. It is clear that in the present proceedings this point was not brought to the attention of the Division in any way. However, *247 Schwenn did testify that after taking into account certain offsetting figures, the above-stated valuations (relating, it will be recalled, to the year 1954) came to the same amount as the valuations placed by him on the properties in proceedings before the Division in connection with assessments for 1949. See Grand View Gardens, Inc. v. Borough of Hasbrouck Heights, 14 N.J. Super. 167, 169, 171 (App. Div. 1951), dealing with 463 Boulevard (the Appellate Division opinion as to 441 Boulevard is unreported). Indeed, in the current proceedings he employed the very appraisal (with certain amendments inserted in pen) which he had had typed up for use in the previous cases. In these previous cases he had testified that his valuations were `approximately 60 per cent * * * of today's or October 1948 valuations, or 100 per cent [of the] valuation of 1941,' and that he had appraised the properties on that basis because this was, so he stated, the method of appraisal employed by the Bergen County Board of Taxation. He also testified in those proceedings that the purchase price of the properties, the land and the improvements (sold in May 1949), was $500,000, as established not only by the stamps on the deed, but also by a statement of the owner made in his (Schwenn's) presence. 60% of $500,000, namely $300,000, is easier to reconcile with Schwenn's appraisal of $336,000 (including the value of the land), than is the figure $500,000. Respondents have come forward with no satisfactory explanation as to this testimony of Schwenn in these earlier cases, which, if true, demonstrates error in the present cause, so plain that we should notice it, even though it was not brought to the attention of the Division. R.R. 1:5-3(c) (the spirit of the rule compels its extension to appeals from administrative agencies).
"Accordingly we think  notwithstanding the unfortunateness of having to remand the cases to the Division a second time  that they should be sent back for a further hearing. If after such a hearing, it appears that Schwenn's valuations approximate only 60% of true value, then unless the taxpayers adduce further proofs on the matter, there is *248 nothing in the case to indicate discrimination. If that issue is eliminated, the Division must then determine the question of true value; and the taxpayers may desire to adduce proof on the matter. In that connection, some comment should be made on the taxpayers' persistent attempt to rely on the findings of the county board, notwithstanding Grand View Gardens, Inc. v. Borough of Hasbrouck Heights, 14 N.J. Super. 167, 171 (App. Div. 1951). As held there, these findings have only a presumptive effect, and on the introduction of substantial evidence in opposition to them, they cease to have any effect in the case.
"There is one other question argued before us which should be decided now, since it will doubtless be brought up on the remand. The borough contends that the Appellate Division's and the State Division's judgments as to the 1949 assessments are res judicata and hence determinative of the present controversy over the 1954 assessments. An appeal as to an assessment for one year and a subsequent appeal as to an assessment for another year, each present a separate cause of action. Hence in the absence of a statute to the contrary, a judgment determinative of the first assessment is not binding in the subsequent litigation as to the second assessment, except under the doctrine of collateral estoppel  that is, only as to issues actually litigated and determined in the first case. In re Mutual Benefit Life Ins. Co., 35 N.J. Super. 113, 116 (App. Div. 1955); Atlantic City Transp. Co. v. Director, Division of Taxation, 12 N.J. 130, 144 (1953); Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 102 (1952); Hancock, Comptroller v. Singer Mfg. Co., 62 N.J.L. 289, 339 (E. & A. 1898); New Jersey Junction R. Co. v. Jersey City, 70 N.J.L. 104 (Sup. Ct. 1903); Restatement, Judgments § 68, also p. 299; cf. Continental Purchasing Co. v. City of Newark, 18 N.J. Misc. 204 (Bd. Tax App. 1940); Central R.R. of New Jersey v. Martin, 19 N.J. Misc. 427, 441, 442 (Bd. Tax App. 1941); but cf. City of East Orange v. Church of Our Lady of the Most Blessed Sacrament, 25 N.J. Misc. 58, 61 (Div. Tax App. 1946).
*249 "The issue of discrimination, now raised, was, so far as we have been informed, neither litigated nor determined in the proceedings with respect to the year 1949. That being so, the judgments entered there are not in any way binding as to that matter.
"A question may also be presented as to whether the judgments fixing the true value of the properties for 1949 conclusively establish their true value for 1954, where there is no proof of a change in value. We will not decide the point, since the precise question has not been argued here. We left the question open in In re Mutual Benefit Life Ins. Co., 35 N.J. Super., supra, at pages 116, 117; cf. Jersey City v. State Department of Taxation and Finance, 136 N.J.L. 353, 358 (Sup. Ct. 1948); Jersey City v. Martin, 20 N.J. Misc. 283, 287 (Bd. Tax App. 1942); Pitney v. Kelly, 21 N.J. Misc. 405, 422 (Bd. Tax App. 1943); Annotation, 150 A.L.R. 5, 78 (1944); but see Pitney v. State Board of Tax Appeals, 136 N.J.L. 157 (Sup. Ct. 1947), commented on in Delaware L. & W.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 553 (App. Div. 1951), reversed on other grounds 10 N.J. 418 (1952); City of Newark v. Newark & Essex Bldg. Corporation, 25 N.J. Misc. 228, 236 (Div. Tax App. 1947). Note too the implications of N.J.S.A. 54:2-43, the so-called freeze statute.
"The appeal will be retained, but the case will be remanded to the Division for a hearing in conformity with this opinion and for the Division's further consideration and resultant determination. A supplementary record of the proceedings and testimony taken before the Division will be filed in two months; appellant will have 30 days thereafter within which to serve and file its brief, and respondents will have a like time within which to serve and file their answering briefs."
On the second remand the respondents submitted no proof but the borough recalled Schwenn who testified concerning his previous testimony of values and theories he used in *250 arriving at the figures. The Division of Tax Appeals concluded:
"We have carefully analyzed and thoroughly considered the testimony of this witness [Schwenn] and our settled conclusion is that his figures of $148,000 and $171,000 represent his opinion of the true value of these buildings in 1954."
R.R. 4:88-13 permits us to review the findings of fact and make our own independent findings on an appeal from an administrative agency such as this. However, great weight must be placed upon the board's action unless it has arrived at its findings by manifest violation of law or by a clear abuse of its discretion. We cannot disturb its findings where there is evidence which can reasonably support them. In Zachariae v. Division of New Jersey Real Estate Commission in Department of Banking and Insurance, 53 N.J. Super. 60, 62 (App. Div. 1958) we stated:
"On a review of facts determined by an administrative agency, a judicial tribunal is confined to the question of whether the findings are supported by substantial evidence, i.e., such evidence as a reasonable mind might accept as adequate to support the conclusion (In re Application of Hackensack Water Company, 41 N.J. Super. 408, 418 (App. Div. 1956)) or, to express it differently, whether the evidence furnished a reasonable basis for the agency's action (In re Greenville Bus Co., 17 N.J. 131, 138 (1954)). * * * So the evidence and proceedings must be examined within this framework."
See also Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 104 (1952).
If we assume that the Division of Tax Appeals properly found that Schwenn appraised and established $336,000 as the true value of the buildings and lands we hold that discrimination has been proved under the tests set forth in Jat Company, Inc. v. Division of Tax Appeals, 47 N.J. Super. 571 (App. Div. 1957), because of the fact that, based upon a true value of $336,000, this would mean that this taxpayer's property is being assessed at a percentage higher than the 33-1/3% of true value which is the common level *251 or overall ratio (and not the average ratio as was the situation in Jat) applied to the other property in the entire community as testified to by the assessor here. This court there set out two requirements for a showing of discrimination (at page 581):
"* * * (a) that the assessing authorities are applying a common or general standard of valuation in the general administration of their assessing function, whether that standard is pursuant to or in violation of any statute, and (b) that one or a relatively few taxpayers are being systematically or intentionally singled out for subjection to a more burdensome assessment standard than that being generally administered."
Plaintiff relies on the second requirement, and asserts its absence as dispositive on this point. Plaintiff refers to the language at page 585, where this court stated:
"In evaluating the proofs before us we have regard for the caveat that: `mathematical precision in the valuation of property for taxation is not requisite, nor is it attainable. Absolute equality is impractical.' Delaware L[ackawanna] & W[estern] R.R. Co. v. Neeld, supra (23 N.J., [561] at page 570). `Protection against intentional systematic discrimination' is the objective of the particular sanction against illegal taxation which is commonly known as a discrimination appeal. Ibid. It has been repeatedly held that the equal protection clause is not designed to cure `inequality in taxation which results from mere mistake or error in judgment of tax officials.' [Citations.]"
However, when one reads this language in light of the facts of the Jat case, its non-application to the instant case is apparent. The court was there concerned, as we have said, with a charge of discrimination based on the average ratio in the assessment of similar properties. Obviously, complete equality cannot be achieved in that type of case as not the same standard or percentage of value was used in assessing each property.
But the charge here is "mathematical discrimination," i.e., applying a higher assessment percentage to one property than is commonly applied in the community. There would be discrimination present if this taxpayer were assessed at more than 33-1/3% of true value, the admittedly generally *252 prevailing rate in this community. This is not a question of mistake or error in judgment. It would amount to systematic or intentional discrimination under the rule quoted. If that were all that were involved, in the instant case the borough's assessment would be clearly discriminatory.
However, before finally determining the cause, we are confronted with the question as to just what values did Schwenn testify, bearing in mind that the taxpayers offered no proof on the question. At best his testimony is most confusing, especially in light of his earlier testimony that he computed value on reproduction cost per room and on capitalization of rents. There is no doubt that Schwenn did not interpret, in this case involving 1954 assessments, true value as the price of the property "would sell for at a fair and bona fide sale by private contract" on the prior October first. N.J.S.A. 54:4-23; Switz v. Middletown Township, 23 N.J. 580, 592 (1957). The witness testified on the second remand that he based his figure of $336,000 on "60% valuation of today's or October 1948 valuations, or 100% valuation of 1941.", that his figure "was only 60% of the inflated value of that time"; that "I would say that this property would have had a market value or, as you call it, a true value between $450,000 and $500,000 as of 1949"; and that the market value would be the same in 1954 and that $336,000 was "my value. That's in my opinion, my market value, yes." The following colloquy took place:
"Q. That's what it is really worth, is that what you mean? A. That's what I thought it was worth as if true value, which I said before was an opinion of mine, would be a hundred percent value in 1941, not a hundred percent value in 1948 or '49.
Q. When you say true value you mean its intrinsic value, what it was really worth? A. That is right.
Q. You feel that perhaps on a temporary basis it might sell for more, for four or five hundred thousand dollars, but its true value was still only this figure that you arrived at by your computation. A. That's correct, sir.

* * * * * * * *
Q. If I were your client and I liked these two buildings and I came to you, in other words, you are saying you would advise me that the value was $336,000.00. If I can buy it for that, it's the *253 fair market  A. Sir, I would say to you if you wanted to buy this building, it would probably cost you $450,000 to $500.000. If you ask me what it's worth, it's worth $336,000."
It can be clearly ascertained that Schwenn based his figure of $336,000 as true value on the current inflation. He said that his reason for using 60% was because "I didn't believe in the inflated values as of 1948." Again, referring to his method of appraising at 60% of the inflated values, Schwenn testified "This, in my opinion, in my method of appraising, was the true value of the property."
Schwenn's method of appraising true value appears at first glance to find some support in the Switz opinion. Mr. Justice Heher there stated (23 N.J., at pages 595-596):
"And, moreover, a hurried general assessment at full true value would not be conducive to common and individual right. A sales-assessment ratio study cannot for obvious reasons be determinative of true value in the statutory sense. Furthermore, the market value is evidential but not the exclusive criterion; it is not the invariable test of true value. Special circumstances may `increase or depress market value without affecting true value or vice versa.' Harborside Warehouse Co., Inc. v. Jersey City, 128 N.J.L. 263 (Sup. Ct. 1942), affirmed 129 N.J.L. 62 (E. & A. 1942); Universal Insurance Co. v. State Board of Tax Appeals, 118 N.J.L. 538 (Sup. Ct. 1937); Newark v. Tunis, 82 N.J.L. 461 (E. & A. 1911); North Bergen Township in Hudson County v. Bergen Boulevard Holding Co., 133 N.J.L. 569 (E. & A. 1946); L. Bamberger & Co. v. Division of Tax Appeals, 1 N.J. 151 (1948). `Value for the purposes of taxation has some measure of permanency which renders it secure against general temporary inflation or deflation.' City of Newark v. West Milford Township, 9 N.J. 295 (1952)."
The above-quoted language would seem to allow for a method such as Schwenn employed herein. However, the court was referring to sudden and unusual inflationary spurts, such as a sudden demand for certain types or locations of property. The Switz language does not apply to a long term inflationary trend such as the current one to which Schwenn was referring, for the inflation may never reverse its upward spiral. If not, then the statutory test may never apply unless someone established another date (as Schwenn established the year 1941) as the basic date. *254 Until this is done, each expert would rely on a different year thus resulting in an inequality of assessments.
We hold that Schwenn, whether he intended to do so or not, established true value in the sense required by the statute as $450,000 or $500,000. We must therefore hold that there was no substantial evidence to support the Division's findings that Schwenn found the true values of the buildings to be $148,000 and $171,000 and we are compelled to make our own findings of true value at the higher figures. This conclusion disposes of the case as the buildings were being assessed at less than 33-1/3% of such true value with the result that we find no discrimination.
Reversed with directions to re-establish the borough's assessments of $55,000 for 441 Boulevard and $70,000 for 463 Boulevard.