EVERS, J. T. C.
Alexander and Ernest Gottdiener (taxpayers) seek farmland assessment of their property for the tax years 1974, 1975 and 1976 in accordance with the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. (the act). A lengthy hearing was held in the Division of Tax Appeals (Division) during which the taxing district, Roxbury Township, (township), moved to dismiss the 1974 and 1975 appeals on the grounds of res judicata and collateral estoppel. While a decision was pending these actions were transferred to the Tax Court pursuant to N.J.S.A. 2A:3A-26.
Township argues that the taxpayers had a final adjudication of their 1972 and 1973 claims in the Division. The Division denied the claims, which decisions were affirmed by the Appel *212 late Division of the Superior Court. The central issue in the prior action concerned the requisite income requirements found in N.J.S.A. 54:4-23.5, which states in pertinent part:
Land, 5 acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced thereon together with any payments received under a soil conservation program have averaged at least $500 per year during the two year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500 within a reasonable period of time.. . [1]
The following critical portion of the Division’s opinion below which dealt with the income requirement, serves as a foundation for the instant motion:
I find that the income to this land during the pertinent years was as follows:
1970 — $967.20 from Norberg and soil conservation; 1971 — $409.60 from soil conservation; and 1972 — $661.50 from soil conservation.
The application of the statutory language makes it clear that the income requirements for 1971 and 1972 were not satisfied. Income from a soil conservation program alone is insufficient in view of the use of the word “together” which first makes it necessary to, at least, devote the land to an agricultural or horticultural use before considering soil conservation payments. Secondly, it clearly appears that, even standing alone, the 1971 payment of $409.60 is insufficient. Thirdly, petitioner’s argument that all income should be averaged over both years preceding the tax year was diametrically opposed by the clear legislative intendment through the use of the words “$500 per year”, N.J.S.A. 54:4-23.5 supra.
In affirming the Division, the Appellate Division, in its unpublished opinion (A 18 83-76, decided 1/9/78), held “From our review of the record in this case we are satisfied that the Division judge’s findings and conclusions as set forth in his written opinion are ‘supported by substantial credible evidence on the whole record, allowing for agency expertise in evaluation of the credibility of witnesses’, [citations omitted]”. This statement was made immediately after quoting verbatim the above findings of fact and conclusions of law of the Division judge.
*213 Township argues that the full adjudication as to the income requirements for 1971 and 1972 and the dismissal of the 1973 petition, as a matter of law, compels this court to dismiss the 1974 and 1975 actions by virtue of the language of N.J.S.A. 54:4-23.5. It claims that the determination that the taxpayers did not satisfy the income requirements with respect to 1972 and 1973 destroys the 1974 and 1975 applications because the calendar years 1972, 1973 and 1974 are all implicated by way of the express language of the act. The impossibility of taxpayers succeeding herein, according to township, is based on the incontrovertible fact that taxpayers have already had their day in court as to the tax years 1972 and 1973. Thus, by virtue of the act’s dovetailing prior years with the tax years in question taxpayers are precluded from re-litigating issues determined in the action for the tax years 1972 and 1973.
Taxpayers resist the motion by arguing res judicata is not applicable to farmland assessment determinations in different years. As to collateral estoppel they argue that it does not apply to facts unnecessary to the prior determination and that the 1972 income issue was not necessary to the 1972 and 1973 tax year actions. They also argue that the taxpayers’ “motivation” to litigate the issue differed in the 1972 and 1973 prior action. Finally, they argue collateral estoppel is not applicable in administrative proceedings when it would produce an inequitable result.
The often confused doctrines of res judicata and collateral estoppel must be viewed in the unique area of taxation. Initially it must be recognized that “each annual assessment of property for taxation is a separate entity, distinct from the assessment of the previous or subsequent year”. Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 162, 65 A.2d 828 (1949) and Aetna Life Insurance Company v. Newark, 10 N.J. 99,103, 89 A. 2d 385 (1952). Yet, the general statement is deceptive because tax history is often evidential and furthermore where the factual situation and questions presented are the same, a prior adjudication of a similar nature may be controlling. Id., 103- *214 104, 89 A.2d 385. Accord. Atlantic City Transportation Company v. Director, 12 N.J. 130, 144-145, 95 A.2d 895 (1953).
The Division, being an administrative agency exercising quasi-judicial functions, could apply the doctrines of res judicata, and collateral estoppel in appropriate cases. Lubliner v. The Board of Alcoholic Beverage Control of Paterson, 33 N.J. 428, 165 A.2d 163 (1960) and Hackensack v. Winner, 162 N.J.Super. 1, 6, 392 A.2d 187 (App.Div.1978) modified on other grounds, 82 N.J. 1, 410 A.2d 1146 (1980). See also Hasbrouck Heights v. The Division of Tax Appeals, 54 N.J.Super. 242, 248, 148 A.2d 643 (App.Div.1959) and other authorities cited therein.
In City of Hackensack v. Winner, 162 N.J.Super. at 27-28, 392 A.2d 187, the Appellate Division succinctly stated the doctrine of res judicata:
Res judicata as a principle of law bars a party from relitigating a second time what was previously fairly litigated and determined finally. The general requirements for the invocation of this principle are a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties and cause of action and things sued for.
Res judicata binds litigants, through a general judgment, on all grounds that were or could have been raised therein. Bowers v. American Bridge Company, 43 N.J.Super. 48, 127 A.2d 580, aff’d. o.b. 24 N.J. 390, 132 A.2d 28 (1957). This principle distinguishes res judicata from collateral estoppel (sometimes called estoppel by judgment) even though collateral estoppel is an extension of the doctrine of res judicata. State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977).
In Mazzilli v. Accident and Casualty Insurance Company, 26 N.J. 307, 139 A.2d 741 (1958), the leading New Jersey case on the topic, the court carefully highlighted what is invariably the key test as to the applicability of collateral estoppel: the distinction between matters directly in issue or those collateral to the initial litigation. It stated, at 317, 139 A.2d 741: “Thus the determination of merely evidentiary or mediate facts, even though the determination of the facts in issue is dependent upon the determination of such evidentiary or mediate facts, is not conclusive in a subsequent action between the parties on a different claim”. *215 The court stressed that a full and fair litigation of facts bearing only on credibility or of a lesser importance with respect to the desired remedy are not contained in the class of facts directly in issue or as is sometimes labelled “ultimate facts”. Accord. Gareeb v. Weinstein, 161 N.J.Super. 1, 390 A.2d 706 (App.Div. 1978) where the Appellate Division also noted that where the litigant in the second action may avail himself of different procedural techniques absent in the initial action, collateral estoppel is inapplicable. Compare Harbor Land Development Corp. v. Mirne, 168 N.J.Super. 538, 403 A.2d 937 (App.Div.1979).
Township’s reliance on res judicata is misplaced. The initial action pertaining to the tax years 1972 and 1973 could never preclude the taxpayers from litigating subsequent tax years because the identity of issues and the identity of cause of action is absent. This is apparent from the rationale of Hackensack Water Co. v. Division of Tax Appeals, supra, and Aetna Life Insurance Company v. Newark, supra. Each assessment is a separate entity which gives rise to a separate cause of action. It must be emphasized that res judicata can be used minimally in tax proceedings in view of the unavoidable effect of time on value. It would only apply herein if the taxpayers attempted to re-litigate their farmland application for the tax years 1972 and 1973 in their entirety. Thus township’s motion for dismissal based on this ground is denied as to all years in question.
Township’s reliance on collateral estoppel is well taken only because of the unique scheme found in the act. It necessarily implicates the two succeeding calendar years to the tax years in question. Here, the 1974 application could never succeed because for 1972, the statutory requirements were not satisfied. Although the conservation payment of $661.50 received in 1972 and the alleged 1973 farm income of $12,318.01 together with a conservation payment of $293.76 would seemingly satisfy the income requirements mandated by N.J.S.A. 54:4-23.5 that statute must be interpreted in light of the preceding sections of the act. N.J.S.A. 54:4-23.3 and 23.4 state that land shall be deemed to be in agricultural or horticultural use when *216 devoted to the production of plants, animals, fruits and like products. The land therefore must be producing such products before the income requirements of N.J.S.A. 54:4-23.5 can be considered. (Emphasis supplied). It is only in that posture that the provisions of the latter statute providing for averaging the gross sales of agricultural or horticultural products produced thereon together with any payments received under a soil conservation program in order to satisfy the two year income requirements carries out the apparent legislative purpose of the act. Lands which produce nothing, notwithstanding the receipt of conservation payments, cannot be deemed to be in agricultural or horticultural use. Conservation payments alone, without agricultural or horticultural use, cannot be used in the income averaging process. As a result, even if taxpayers in 1973 satisfied all requirements, their 1974 claim must fail by reason of their failure to actively devote the premises to agricultural-horticultural use for the two preceding years. A contrary interpretation could result in grave abuses to the achievement of the purposes of the act. Township’s motion for dismissal of taxpayers’ 1974 farmland claim is granted.
Township’s contention that the same result should obtain to the 1975 claim is without merit since there has not been a prior adjudication of any issues that would affect the 1975 tax year claim. The Division found that the taxpayers did not qualify for farmland assessment for the tax years 1972 and 1973 because of its failure to satisfy the 1971 and 1972 income requirements. No such findings were made with respect to 1973. The merits of the 1975 and 1976 claims will now be addressed.
Township’s testimony was primarily directed at the satisfaction of the income requirements as found in N.J.S.A. 54:4-23.5. However taxpayers’ case consisted of a confused and somewhat bizarre picture of a host of people and activities on the subject property. What evolved to be the key issue in the case was the credibility of the witnesses who were the foundation of the taxpayers’ case.
*217 Ernest Gottdiener, the managing partner of the taxpayers’ operation, was the principal witness for the taxpayers and testified that he and his brother bought the property in 1966 when it was then known as Mooney Farm. The subject property (Mooney Farm) consists of approximately 175 acres and contains two separate tax lots and blocks.
In seeking to establish the requisite farm income for the calendar year 1973, Mr. Gottdiener testified to a $12,318.01 gross sale of cattle by Roxbury Cattle Growers, Inc. He explained that Roxbury Cattle Growers (R.C.G.) was a corporation formed for the purpose of raising cattle, the principal stockholders being the Gottdiener brothers. R.C.G. held Mooney farm under a lease from the Gottdiener brothers for a term commencing in October 1972, terminating in September 1974. It was testified that the animals which were the subject of the sale were introduced in September or October 1972, and consigned to Livestock of New Jersey, Inc. at various times from April 1973 through October 1973. R.C.G. ceased to function after these consignments. A six month lease of the lands was then entered into with Raymond Rastaad commencing August 1973. The taxpayers were totally unable to substantiate any purported sale of animals by Rastaad even though there was some suggestion of such a sale by way of documentation. It was further testified that the taxpayers received a soil conservation payment of $293.76.
This picture of bustling farm activity is in stark contrast to the testimony of the assessors of the township.[2] An assessor stated that he visited the property approximately 30 times in 1973 and in 1974 and saw no harvesting of crops or raising of animals on Mooney Farm. The assessor stated that he saw hay harvested in 1975 in an area of approximately 26 acres. It was established, however, that the assessor did not inspect the interiors of the barn.
*218 Another assessor corroborated this testimony. On the basis of his physical inspections, he saw no traces (including droppings) of animals or hay harvesting for 1973 and 1974. He testified that in 1975 he saw evidence of hay being cut. He did not inspect the interior of the barns, but emphasized that there was no evidence whatsoever of animals on the land.
The only rebuttal offered was a representation by the township zoning officer that in March 1973 he saw 25-30 cattle in the barn. Significantly, he also testified that the taxpayer informed him that he and his brother were going into the cattle business.
With respect to the year 1973, the court is constrained to find that the purported R.C.G. sales proceeds cannot be considered as farm income. N.J.S.A. 54:4-23.5 speaks in terms of ... “gross sales of agricultural or horticultural products produced thereon...” (emphasis added). Thus the taxpayers had to prove that such products (cattle herein) were produced on Mooney Farm. Taxpayers’ proofs fell far short of the target since there was no evidence establishing how long the animals were there and whether they were products of the farm except for the sketchy references to the fact that they were introduced to the land in the latter part of 1972 and the attempts to establish that they were consigned for sale from April to October 1973. This is not to say that to qualify for farmland assessment such animals must have been born and raised, until slaughter, on the farm. It does mean, however, that a taxpayer must demonstrate an ongoing animal husbandry operation which demands that such animals must remain on and feed off the land for a sustained, reasonable period of time. An arrangement where animals are here today, gone tomorrow, does not comport with the legislative intent of the act. Their presence must amount to being “produce” of the land.
The same is found to be true with respect to the alleged sales by Rastaad since they were said to have occurred merely five months after his tenancy commenced. The situation here is even more spurious and will not be considered in view of the fact that the taxpayer could not substantiate these purported sales at all.
*219 Throughout taxpayers’ testimony, when compared to the documentation, various other discrepancies developed. The 1973 farmland applications assert that in the pretext year of 1972, 111 acres and 30.9 acres were devoted to “pastureland and hayfields” respectively. In support thereof correspondence dated October 10,1974, under signature of Ernest Gottdiener stated that in 1972 “we harvested more than one thousand bales of hay”. The testimony at trial, however, revealed that no hay at all was cut from either of the two tracts in 1972. The $180 purportedly received from one Nettie Mooney in 1972, was demonstrated to have been derived from hay cut in some previous year.
The 1975 farmland application also claimed 111 acres and 30.9 acres to have been in pasture and hayfields in the pretax year of 1974. Correspondence under the signature of Ernest Gottdiener stated, “In 1974 we harvested 1,200 bales of hay, 600 have been used and 600 are stored in the barn at the farm”. The testimony of Mr. Gottdiener on the other hand was to the effect that although he and his brother were not in possession of the lands that year, he nevertheless allegedly supplied two men to the tenant Rastaad to help cut hay. In return the taxpayers were supposedly given 750 to 1,000 bales of hay by Rastaad, but Ernest Gottdiener was unable to state the total bales that were cut.
Ernest Gottdiener’s version of what allegedly occurred in 1974 is to be contrasted with that of his witness, Kay Rastaad, who testified that her husband cut hay only once during his occupancy of the property, but that was in 1973. She further stated that everything he cut was used for his animals.
These were only some of the inconsistencies that developed at trial. They were aggravated by Mr. Gottdiener’s inability to state with any definiteness that the records of income and expenses for the farm were documented. He stated that a checkbook was the income and expense account for Mooney Farm but, according to the witness, if there wasn’t enough money in that account the money was obtained elsewhere. This *220 damaging admission reflected the taxpayer’s penchant for inaccuracy, be it inadvertent or intentional, and typified, for the most part, taxpayers’ entire ease.
With respect to the remaining purported income I note that income from a soil conservation program alone is insufficient in view of the use of the word “together” in N.J.S.A. 54:4-23.5. The clear import of this language first makes it necessary to at least devote the land to an agricultural or horticultural use before considering soil conservation payments. Accordingly, the court finds that there was no farm income derived for the calendar year 1973 with respect to Mooney Farm.
For the 1974 tax year income the taxpayer submitted two sales of hay in its attempt to satisfy the farm income requirement. The first purported sale was to Oakwood Village Association (O.V.A.), which is actually a real estate partnership composed of Alex and Ernest Gottdiener. O.V.A. owns a garden apartment complex in nearby Mount Olive Township and allegedly purchased 1,000 bales of hay for $1,000 from Mooney Farm for use in preventing erosion and for general landscaping purposes thereon. This sale was naturally suspect in that it was a sale whose buyer and seller were one and the same party. The taxpayer’s proofs failed to persuade this court by a fair preponderance that this sale did in fact transpire. The unimpeached testimony of the two assessors, who testified that they saw no hay growing, outweighs any purported documentary evidence that was produced by the taxpayer. In addition, there was insufficient evidence to connect the needs of O.V.A. with the 1,000 bales of hay. That need and use of that relatively large amount of hay required more of an explanation by the taxpayer than what was offered. In sum, in attempting to prove the existence of such a sale, the proofs must clearly preponderate in favor of its existence. That was not the case here.
The other alleged 1974 income was a sale of 500 bales of hay for $560 to a landscaper employed by the Mooney Farm who later became an employee of O.V.A. While the taxpayer of *221 fered a cancelled check drawn by the purchaser, under the circumstances I find that more was required to verify this sale; for instance, the testimony of the purchaser himself. Accordingly, I hold this transaction to be as suspect as the O.V.A. transaction and I will not consider it for two reasons. First, I have grave doubts about its existence in view of Mr. Gottdiener’s impeached credibility. The taxpayer should have produced the purchaser to verify the sale and could thus have erased any potential doubts as to its legitimacy. Secondly, there was no evidence that such hay was “produced” from Mooney Farm. This is exacerbated by the unimpeached testimony of the two township assessors who stated they never saw any hay growing on Mooney Farm in 1973 or 1974.
With respect to 1975 income the taxpayer relied on three purported transactions. The first was another O.V.A. transaction which will not be considered for the same reasons applicable to the 1974 O.V.A. transaction. The taxpayer did not add any additional evidence in terms of testimony or documentation, so nothing more need be said concerning this particular transaction.
A second transaction involved the sale of hay to R. Hoernlen in the amount of $1,050. A forthright witness, Mr. Hoernlen’s testimony verified the sale of hay produced on the farm, which testimony coincided with the testimony of the two assessors. The township failed to impeach the testimony with regard to this matter and accordingly, I find that the sale of hay to Mr. Hoernlen in the amount of $1,050 was farm income within the meaning of N.J.S.A. 54:4-23.5.
The final sales transaction for 1975 involved two sales of hay to E. Shark, a tenant of Mooney Farm, totalling $126.50. No evidence other than deposit slips and copies of cancelled checks was produced. In this instance the township did not attack this matter with the same fervor as the others perhaps because of the assessors’ admissions that hay was growing on Mooney Farm in 1975. Without more therefore, I find such sale to be supported by a preponderance of the evidence and will consider it to *222 be farm income. Accordingly, in 1974 I find that no income was produced. In 1975 the sum of $1,176.50 was produced and shall be considered farm income within the meaning of the act. When applied to the facts, it is obvious that the requirements of the act warrant a denial of taxpayers’ appeal for the 1975 tax year. There was no farm income for 1973 and 1974 and thus the 1975 application must fail.
With respect to the 1976 tax year, it is noted that the farmland assessment application filed by the taxpayers apparently recites that 141.92 acres were devoted to pasture and hayfields with the remaining 32.75 acres in woodland or wetland devoted to agricultural or horticultural uses. Pursuant to N.J. S.A. 54:4-23.5, the first five acre portion must produce $500 in income; the remaining 136.92 acres of pasture and/or cropland —$684.60; and the 32.75 acres of woodland-wetland — $16.38, for a total of $1,200.98. Obviously the $1,176.50 in income produced only in 1975 also fails to qualify the lands for farmland assessment in 1976.
In making these findings, I note that separate applications for farmland assessment were filed with respect to each tax lot in question. Even if the township were to claim that each application should be treated independently (despite the fact that the testimony related to one farm operation covering both lots), I conclude that both applications would fail to qualify for farmland assessment for failure to satisfy the statutory income requirements.
In view of the foregoing, the Clerk of the Tax Court is directed to enter judgments affirming the judgments of the Morris County Board of Taxation as follows.
Block 36, Lot 5
1974 1975 - 1976
Land $130,500 $130,500
Improvement 2,500 _ _ _ _ _
Total $133,000 $130,500
*223 Block 37, Lot 6
1974, 1975 and 1976
Land $390,900
Improvement 17,400
Total $408,300

 An application for a farmland assessment must be submitted on or before August 1 of the pretax year. N.J.S.A. 54:4-23.6. Thus a 1974 application must be based on the income requirements of the two prior calendar years, 1973 and 1972. The 1974 income figures are, of course, not known as of the filing date. This is an important point with respect to this motion.

 Roxbury has a board of assessors composed of three part-time assessors.