225 N.J. Super. 399 (1988)
542 A.2d 931
TOWNSHIP OF WARREN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
MARION R. SUFFNESS, CHARLES G. & BARBARA A. SAVINI, AND WILLIAM L. & NANCY A. SMITH, DEFENDANTS-APPELLANTS, AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1988.
Decided June 6, 1988.
*403 Before Judges SHEBELL, GAYNOR and A.M. STEIN.
William L. Smith and Barbara A. Savini, appellants and cross-respondents, argued the cause pro se (All appellants and cross-respondents, pro se, joined in the brief filed by William L. Smith).
Steven A. Kunzman argued the cause for respondent and cross-appellant (Kunzman, Coley, Yospin & Bernstein, attorneys; Steven A. Kunzman, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
These cross-appeals pertain to the 1981 tax year assessments of adjacent residential properties owned by William L. Smith and Nancy A. Smith (Smith), at 10 Jennifer Lane (Block 139A, Lot 5), Charles G. Savini and Barbara A. Savini (Savini), at 12 Jennifer Lane (Block 139A, Lot 7), and Marion R. Suffness (Suffness), at 14 Jennifer Lane (Block 139A, Lot 8), located in the Township of Warren.
On appeal Smith, Savini and Suffness (defendants) contend the Tax Court erred in not affirming the lots' 1981 tax year assessments established by the Somerset County Board of Taxation (county board). On cross-appeal the Township of *404 Warren (plaintiff) contends the Tax Court erred in not adopting the lots' valuations for the 1981 tax year established by Michael S. Sorich, a real estate appraiser and plaintiff's expert witness.
The three lots, containing defendants' single-family houses, abut a quarry to their rear. As of 1986, the houses ranged in age from 17 to 22 years. Defendants appealed plaintiff's 1976, 1979 and 1981 tax assessments to the county board, which substantially reduced the assessments for all three years. Plaintiff appealed the county board assessments for all three years.
Prior to the original Tax Court trial, plaintiff's 1981 appeals were "joined" with its 1976 and 1979 appeals "per agreement of all parties;" however, on January 10, 1984, when the parties appeared for trial the Tax Court Judge noted "neither side" was "ready to go ahead" with the 1981 appeals. He therefore consolidated only the 1976 and 1979 appeals "for purposes of trial."
On January 10, 1984, Sorich testified as plaintiff's only expert witness. He used the "market approach" to value the three lots for all six tax years, 1976 through 1981, because, "for single-family residences," that approach was the "best methodology in terms of measuring value." Sorich also used the "cost approach" to value all three lots for all six tax years, but only to "test the plausibility of the market approach." He asserted that his market approach and his cost approach "corroborated each other" for each lot and tax year, in the sense that the value conclusions yielded by each approach were "close" in amount. At the conclusion of Sorich's testimony on January 10, 1984, his three written appraisals were entered into evidence.
After both sides rested on January 20, 1984, the Tax Court Judge rendered an oral decision. The judge noted that defendants had presented no expert evidence and concluded that Sorich's evidence "establishes what the assessment should be on those three residential lots." The judge directed entry of *405 separate judgments, in essence "affirming the original assessment" for each lot for the 1976 and 1979 tax years.
On appeal of that Tax Court ruling, we noted that Sorich established the lots' values for 1976 and 1979 "by taking subsequent comparable sales and `trending back' to the assessing dates and then corroborating those findings with cost approach assessment data." Township of Warren v. Suffness, et al., No. A-3281-83T5, slip op. at 3 (App.Div. November 27, 1985). When applied to the 1976 tax year, we concluded Sorich's approach contained a fatal flaw:
This approach for the year 1976 was one of total hindsight and did not use facts known or reasonably foreseeable on the [October 1, 1975] assessment date.... All [comparable] sales utilized were subsequent to October 1, 1975. [Id. at 7].
This violated the principle that "sales of comparable property" subsequent to the pertinent "date of valuation ... may not be used as direct evidence of value but may be used only to corroborate value established by comparable sales which preceded that date." Id. at 5. Because of this flaw, we overturned the 1976 assessments of the Tax Court.
We found no fault with Sorich's approach when applied to the 1979 tax year:
For the tax year 1979, although only one comparable sale preceded the [October 1, 1978] assessing date, we are satisfied, with the utilization of the trending and cost approach evaluation as corroborative evidence, there is sufficient credible evidence to support the Tax Court's findings and conclusions. Rova Farms Resort v. Investors Ins., Co., 65 N.J. 474, 484 (1974). [Id. at 8].
We considered at that time the fact that Sorich attributed "no value" to the "portion of each tract that lay beneath the easement" since he "simply treated each tract as if the easement area did not exist," thereby (in effect) reducing the "land area attributable to ... [each defendant's] ownership ... by the area of the easement." Id. at 9. We concluded defendants had "no cause to complain" about this, because Sorich's land-area-reduction approach for the easement "resulted in a benefit to *406 ... [defendants] because they were assessed for less land area [than they actually owned]." Ibid.
We held:
The judgments of the Tax Court as to the 1976 assessment values are reversed and remanded for entry of judgments consonant with this opinion. The judgments of the Tax Court as to the 1979 assessment values are affirmed. [Ibid.].
Defendants' petition for certification of our decision to the Supreme Court was denied. 104 N.J. 377 (1986).
Thereafter, on October 17, 1986, the parties entered into an agreement regarding plaintiff's 1981 tax year appeal whereby they agreed that the court should review the record of the prior case, including the exhibits and the appraisal reports, and the parties would supplement and comment on this record in lieu of a plenary trial of the 1981 tax year case.
However, at the formal trial session held on December 5, 1986, plaintiff's attorney argued that the "primary issue" raised by defendants in the 1981 tax year appeal was the "competency of ... [Sorich's] methodology of the evaluation." Because the Appellate Division had determined that Sorich's 1979 tax year appraisals were "satisfactory," and because Sorich's 1981 tax year appraisals were based on "substantial comparables prior to the [October 1, 1980] assessment date," plaintiff's attorney claimed that the "specific issue which is the basis of the [1981 tax year] appeal has been resolved" by the Appellate Division.
The Tax Court Judge replied that as he perceived the parties' mutual understanding as to how plaintiff's 1981 tax year appeal was to be tried, "I did not understand that as requiring me to come to the same result that the Court came to in the 1979 [tax] year." The Tax Court Judge rejected plaintiff's argument stating:
[I]t's my job to decide the correct assessment for 1981 .... [b]ased upon the evidence that's presented to me. If I'm presented with Mr. Sorich's [prior] testimony and appraisals, I'll consider those and I'll consider whatever [new] testimony the defendants have. And then I'll come to a separate, independent *407 determination [for the 1981 tax year] regardless of what the Appellate Division said or what Judge Conley said with respect to the 1979 [tax] year.
On May 15, 1987, the Tax Court Judge issued three substantially identical letter opinions, one for each lot, noting that none of the parties had presented him with any "additional appraisal testimony." He noted that Sorich's appraisals contained no deduction from the improvements' value for the adverse effect of the proximity to the quarry. The Tax Court Judge found that the "dwelling house" on each lot "has been affected by the noise and dust caused by the quarry operation," and "[c]racks in ... [each] house have occurred as a result of blasting operations at the quarry," which was in operation "on the October 1, 1980 assessing date." He concluded "a deduction must be made for economic obsolescence." By this we assume he meant to include the loss in value due to the quarry proximity and operation.
The judge accepted Sorich's "land" valuation for each lot, which was based on Sorich's analysis of comparable "land sales" (i.e., via the market approach), "but exclud[ed] ... [Sorich's] quarry proximity adjustment." That is, the judge accepted Sorich's "value of the ... [lots'] land ... before [Sorich's] adjustment for quarry proximity." He also accepted Sorich's "total depreciated cost of improvements."
From his "total value" for each lot's land and improvements, the judge deducted "25% for the adverse effect of the easement and the proximity to the quarry" by allocating a 25% deduction from his total value of each lot's land and a 25% deduction from his total value of each lot's improvements. "In adopting this value by the cost approach," he found it was "consistent with the market approach as reflected by [the comparable] sales utilized by" Sorich.
Plaintiff contends that under the doctrines of law of the case, res judicata or collateral estoppel, the Tax Court should have accepted Sorich's appraisals as establishing the lots' October 1, 1980 values because defendants presented no expert valuation evidence to contradict Sorich's appraisals.
*408 We reject defendants' contention that plaintiff waived its right to raise these doctrines on appeal. As plaintiff asserts, while these doctrines were not specifically raised at trial, the "essence" of these doctrines was raised. The purpose of the law of the case doctrine is to avoid relitigation of the same issue "in the same suit." Ayers v. Jackson Tp., 202 N.J. Super. 106, 128 (App.Div. 1985), mod. on other grounds 106 N.J. 557 (1987). We think it is clear that the 1981 assessment case is separate from the earlier assessment cases. This is not a situation where the "law of the case" doctrine is applicable.
Res judicata is the principle which bars a party from relitigating a second time what was litigated and finally determined the first time. The general requirements for its invocation are "a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties and cause of action and thing sued for." City of Hackensack v. Winner, 162 N.J. Super. 1, 27-28 (App.Div. 1978), mod. on other grounds 82 N.J. 1 (1980). In tax proceedings the action on a prior tax year cannot preclude a taxpayer from litigating a subsequent tax year because "identity of cause of action is absent." Gottdiener v. Roxbury Tp., 2 N.J. Tax 206, 215 (Tax Ct. 1981). Therefore, res judicata is not applicable here.
Collateral estoppel bars relitigation of any issue that was "actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186 (1977). Accord City of Hackensack, 162 N.J. Super. at 28. It is applicable to questions of fact, questions of law, and mixed questions of law and fact. Gonzalez, 75 N.J. at 187. Collateral estoppel applies not only to matters or facts that are directly in issue, but also to those necessary to support the judgment rendered in the prior action. Allesandra v. Gross, 187 N.J. Super. 96, 105 (App.Div. 1982). It does not extend to "matters or facts ... described as merely collateral or incidental." Mazzilli v. Accident, etc., Casualty Ins. Co., etc., 26 N.J. 307, 315 (1958).
*409 On this point Gottdiener, 2 N.J. Tax at 206, is instructive. In Gottdiener the taxpayers sought farmland assessment of their property for the tax years of 1972 and 1973 pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. 2 N.J. Tax at 211. The Division of Tax Appeals, where the action originated, denied their claims for both years, which denials were affirmed by the Appellate Division. Id. at 211-12. The central issue in the 1972-1973 action concerned the "requisite income requirements" in N.J.S.A. 54:4-23.5, which in pertinent part states:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced thereon together with any payments received under a soil conservation program have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time. [Emphasis supplied].
In relevant part, the Division's opinion found:
that the income to this land during the pertinent years was as follows: ... 1971  $409.60 from soil conservation; and 1972  $661.50 from soil conservation.
The application of the statutory language makes it clear that the income requirements for 1971 and 1972 were not satisfied. Income from a soil conservation program alone is insufficient in view of the word "together" which first makes it necessary to, at least, devote the land to an agricultural or horticultural use before considering soil conservation payments. [2 N.J. Tax at 212].
We affirmed the decision of the Division of Tax Appeals in an unpublished opinion. Ibid.
The taxpayers then sought farmland assessment of the same property for the tax years of 1974, 1975 and 1976. Id. at 211. Pursuant to N.J.S.A. 54:4-23.5, the taxpayers' 1974 application was "based on the income requirements of the two prior calendar years, 1973 and 1972." Id. at 212 n. 1. With regard to the taxpayers' 1974 application, the Tax Court found that the township's "reliance on collateral estoppel is well taken ... because of the unique scheme found in the act," which "necessarily implicates the two succeeding calendar years to the tax years in question." Id. at 215. Therefore, the court dismissed *410 the taxpayers' 1974 farmland claim, since "the 1974 application could never succeed because for 1972, the statutory requirements were not satisfied." Id. at 215-16. However, the court rejected the township's contention that, under the doctrine of collateral estoppel, the "same result should obtain to the 1975 claim" and found this contention to be without merit, "since there has not been a prior adjudication of any issues that would affect the 1975 tax year claim." Id. at 216.
In establishing the lots' values on October 1, 1975 and October 1, 1978, Sorich's "starting point" was the lots' values on October 1, 1980. This was the assessment valuation date for the 1981 tax year. By our November 27, 1985 decision, we affirmed the "1979 assessment values" established under the identical valuation approach, asserting that we were satisfied with the utilization of the trending back from the "1980 value established," and the cost approach evaluation as corroborative evidence. We found sufficient credible evidence to support the Tax Court's findings and conclusions.
Sorich's valuation determinations for October 1, 1975 and October 1, 1978 were wholly dependent upon his valuation determinations for October 1, 1980, which was the starting point for his trending back approach. Therefore, by necessity, the accuracy of Sorich's valuation determinations for October 1, 1975 and October 1, 1978 was wholly dependent upon the accuracy of his valuation determinations for October 1, 1980. Thus, our decision upholding the 1979 assessment values established by Sorich's approach, by necessity, upheld his 1980 assessment values because those values were the integral components of the other two assessments. Sorich's methodology was wholly dependent on the accurate establishment of the lots' October 1, 1980 values. Thus, because there has been a prior adjudication on the issues that establishes the lots' October 1, 1980 values, collateral estoppel should normally apply as to those issues. See Gottdiener, 2 N.J. Tax at 215-16.
*411 Plaintiff correctly contends that, subject only to the ability of the defendant in this 1981 case to present new facts or expert opinions which were not considered in the prior proceedings, the Tax Court should have considered Sorich's appraisals to be "as probative" for the 1981 assessment year as they were "determined to be for the 1979 assessment year; if not more so, since the year in question [1981] is the base year of the [1979] appraisal[s]," and since the 1981 appraisals do not "require any trending [back] to reach a valuation for the year in question." Thus, while the Tax Court was "not required to come to the same valuation as the 1979 case," it would ordinarily be required to accept the appraisal with the same full force and effect as it was accepted by this court unless new evidence was presented.
The Tax Court Judge erred in concluding that the "prior Appellate Division decision is not determinative of value for the 1981 tax year," simply because "the appraisal[s] relied on there did not fully adjust for adverse market factors for the 1981 tax year." We specifically affirmed without qualification the Tax Court's assessments for 1979, thereby establishing the validity of Sorich's deduction decisions concerning the easement's effect on the value of the lots.
The issue of the adverse effect of the easement and the proximity of the quarry was before us in the prior proceeding. Not only did plaintiff's expert exclude the value of the land encompassing the easement, he also reduced comparable land values by about 30% to reflect the land's "proximity to that particular quarry area." The Tax Court was clearly prevented by collateral estoppel from disturbing the prior valuations placed on the land for 1981.
Less clear is the question of whether the Tax Court should be prevented from considering the economic impact of the quarry upon the value of the improvements. Sorich took the firm stance that there was no functional loss in the utility of the homes because of the quarry's presence, and therefore, *412 as noted by the Tax Court Judge, he made no deduction from the value of the improvements. This shortcoming was not directly put in issue before this court in the prior proceeding. While it can be cogently argued that the property owners are foreclosed in this proceeding from raising the issue because of collateral estoppel, we are satisfied that the interests of justice favor not precluding the correction of this error. Cf. Brown v. Brown, 208 N.J. Super. 372, 374 (App.Div. 1986). These pro se property owners in their prior appeal appear to have recognized the issue but only in relation to the expert's use of comparables. We did not decide the issue in the context now raised.
We are convinced, as was the Tax Court Judge, that the failure of the expert to make a deduction from the value of the improvements for their proximity to the quarry was improper. To allow such an error to continue when specifically brought to the attention of a judicial tribunal would be a miscarriage of justice. The invoking of the doctrine of collateral estoppel cannot be allowed to perpetuate such an error.
For the first time in their reply brief defendants contend that the entire controversy rule requires dismissal of plaintiff's 1981 tax year complaints. To raise this issue initially in a reply brief is improper. State v. Smith, 55 N.J. 476, 488 (1970), cert. den. 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970). Accord City of Elizabeth v. Elizabeth Fire Off., 198 N.J. Super. 382, 384-85 n. 2 (App.Div. 1985); Brown v. Shaw, 174 N.J. Super. 32, 39 (App.Div. 1980). Further, on January 10, 1984, all parties implicitly agreed not to consider plaintiff's 1981 tax year complaints at that trial.
Because the houses on the three lots are "older residential homes," defendants contend the Tax Court erred in "utilizing the cost approach as the primary and only method to determine market value of ... [their] residential properties for October 1, 1980."
No single approach must be followed in valuing real property; no particular approach is required or excluded in *413 assessing true value. Pantasote Co. v. City of Passaic, 100 N.J. 408, 414 (1985). Which approach should predominate depends upon the facts of the particular matter, and the reaction to them by the experts. New Brunswick v. State of N.J. Div. of Tax Appeals, 39 N.J. 537, 543-44 (1963). Accord Dworman v. Borough of Tinton Falls, 1 N.J. Tax 445, 452 (Tax Ct. 1980), aff'd 180 N.J. Super. 366 (App.Div.), certif. den. 88 N.J. 495 (1981).
Modern appraisal practice often relegates the cost approach to a "secondary role because cost may not effectively reflect market conditions." J.C. Penney Co., Inc. v. Lawrence Tp., 8 N.J. Tax 473, 479 (Tax Ct. 1986). But the roles of each approach have been reversed in valuing older residential property. Consider Rumson Bor. v. Peckham, 7 N.J. Tax 539 (Tax Ct. 1985).
In computing value "by the cost approach," the Tax Court Judge noted it was "consistent" with Sorich's market approach as reflected by the comparable sales utilized by Sorich. We cannot agree with defendants that the cost approach was the only approach used to determine the lots' values. Rather, the judge corroborated his cost approach with Sorich's market approach.
Defendants contend the Tax Court erred in adopting a totally unsupported opinion of value for the depreciated cost of the homes. Any error was harmless in that the court's application of the cost approach yielded results "consistent" with Sorich's market approach which we validated in our earlier decision. Defendants did not attack Sorich's opinion of the cost of the homes based on their "quality of construction classification" not being supplied by Sorich.
We next consider whether the Tax Court erred in "arbitrarily quantifying" his 25% deductions without supporting basis or foundation in the record. The Supreme Court has recognized that "on de novo review, the Tax Court may determine a true value different from the original assessment, the County Board's assessment, or the taxpayer's valuation." *414 Pantasote Co., 100 N.J. at 416. But the Tax Court's "right to make an independent assessment is not boundless." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The Tax Court's independent assessment "must be based on the evidence before it and the data that are properly at its disposal." Ibid. The Tax Court has "the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." New Cumberland Corp. v. Roselle, 3 N.J. Tax 345, 353 (Tax Ct. 1981). Accord Glen Wall Associates v. Wall Tp., 99 N.J. 265, 280 (1985). See also Samuel Hird & Sons, Inc. v. Garfield, 87 N.J. Super. 65, 73-74 (App.Div. 1965) (Division of Tax Appeals had "the duty to apply its own expert judgment to the valuation data submitted to it by experts, in light of all the evidence in the case," when determining the "true value of the property under appeal.") The Tax Court must determine the value of the subject property "from the evidence," and must not "arbitrarily assign a value to the property not supported in the record." U.S. Life Realty Corp. v. Jackson Tp., 9 N.J. Tax 66, 79 (Tax Ct. 1987).
With regard to the quarry operated on the October 1, 1980 valuation date, the Tax Court Judge found that the "dwelling house" on each lot had been affected by the noise and dust caused by the quarry operation, and cracks had occurred in each house as a result of quarry blasting operations. The Tax Court Judge had the right to apply his own judgment in making an independent assessment of the true values. His deduction from the value of each lot's improvements to account for the adverse effect of the lot's proximity to the quarry in the absence of expert evidence to support such a deduction is sustainable because it is so clearly logical and reasonable that the value of the improvement will be affected by the adverse quarry condition. The judge reasonably articulated why a deduction must be made, although he did not reveal how he arrived at his 25% deduction for quarry impact. Nonetheless, we are satisfied that the figure is not unreasonable or arbitrary *415 in light of Sorich's deduction of 30% when considering the quarry's impact on the value of the land.
Defendants contend that when the Tax Court Judge concluded Sorich's appraisals and testimony were "inadequate to determine the true market value" of the lots, his "only recourse" was to affirm the county board assessments for 1981. Therefore, defendants assert, the judge "went beyond the constraints of the New Jersey Supreme Court's guidelines" in Pantasote Co., 100 N.J. 408, when he made an "independent determination of value" for each lot for 1981.
When a municipality seeks to establish a value for the taxpayer's property which exceeds the value established by the county board's judgment, the taxpayer is "favored by the nonstatutory presumption of correctness of the county board's judgment." Rumson Bor., 7 N.J. Tax at 549. See also Rodwood Gardens, Inc. v. Summit, 188 N.J. Super. 34, 38 (App. Div. 1982) (on appeal to the Tax Court, the county board judgment is "presumed to be correct"). Therefore, the Tax Court's "right to make an independent assessment" is curtailed by this "presumption of validity." F.M.C. Stores Co., 100 N.J. at 430-31. As the Supreme Court phrased it in Pantasote Co.:
We recognize that on de novo review, the Tax Court may determine a true value different from the original assessment, the County Board's assessment, or the taxpayer's valuation. [Citations omitted]. This does not mean that the court must make an independent finding of value based only upon evidence that is brought before it without regard to the presumptive validity of the assessment. [Citation omitted]. Rather, the Tax Court must give weight to the presumption of validity that attaches to the original [or county board] assessment. Only if it finds that the presumption has been overcome by cogent evidence, or there are sufficient collateral grounds, such as an assessment totally unrelated to true value or one derived from a patently arbitrary and capricious assessment methodology, does it become necessary for the court independently to determine true value, and, in that event, to support its own decision in departing from the presumptively valid assessment. [100 N.J. at 416-17, emphasis supplied].
We noted in our earlier decision that on January 20, 1984, the Tax Court Judge concluded that Sorich's appraisal evidence for the 1976 and 1979 tax years was sufficient to overcome the "presumption of correctness" attached to the *416 county board assessments for 1976 and 1979. Sorich's appraisals for the 1979 tax year by necessity established the lots' values as of the 1979 appraisals' October 1, 1980 starting point. Sorich's appraisals for the 1981 tax year utilized comparable sales that preceded the October 1, 1980 assessment date for the 1981 tax year. Therefore, in concluding that Sorich's appraisal evidence adequately supported the Tax Court's finding that this evidence sufficiently overcame the presumption of correctness of the county board judgments for the 1979 tax year, we also implicitly concluded this same evidence was sufficient to overcome the presumption of correctness of the county board judgments for the 1981 tax year. Consequently, the Tax Court Judge could make an independent determination of value for the 1981 tax year without violating the Supreme Court's "guidelines" in Pantasote Co.
We affirm the Tax Court judgment fixing the assessment of the improvements as to each lot. We reverse as to its changes in the assessments of the land in each case. We remand for entry of judgment in accordance with our holding herein.