TAX COURT OF NEW JERSEY



**Mala Sundar**
**JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax: (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

December 21, 2017

**UPLOADED AND BY FIRST-CLASS MAIL**
Debra J. Conley, Self-Represented
Ocean Township, New Jersey

**UPLOADED**
Matthew Goode, Esq.
Arbus, Maybruch & Goode, L.L.C.
61 Village Court
Hazlet, New Jersey 07730

Re:     Debra J. Conley v. Township of Ocean
        Block 86, Lot 23
        Docket No. 008093-2017

Dear Ms. Conley and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter. Plaintiff owns a residence, the above-captioned property ("Subject") in defendant ("Township"). For tax year 2017, the Monmouth County Board of Taxation ("County Board") issued a judgment dated February 28, 2017 affirming the 2017 assessment of $301,300 (allocated $210,000 towards land vale and $91,300 towards improvement value).[1]  For tax year 2017, the average ratio was 88.73% with the lower limit of 75.42% and upper limit of 102.04% (or 100%).

Plaintiff appealed the County Board's judgment to this court.[2]  At trial, she testified as to the physical characteristics of the Subject as being a Cape Cod style, 1½ story residence, with a

---

[1] The prior year's assessment was $229,000, allocated $152,500 for land and $76,500 for improvement.
[2] The court denied the Township's motion that the complaint was untimely filed.

*

gross living area ("GLA") of 1,305 square feet ("SF"), four bedrooms, two full baths, crawl space, no basement, no garage, and located on a lot sized 50x150. Moreover, the Subject is situated on a dead-end street, thus, the only traffic is of/from the homeowners. The residence was built in 1948 and purchased by plaintiff in 1996. Per the property record card, the residence is Class 16, with an effective age of 35 years. The Subject also has an above-ground pool, and plaintiff replaced the siding of the Subject with vinyl post-purchase. The property record card also shows the Subject as having a detached shed, an enclosed porch, a deck, and a patio.

Plaintiff relied upon four (4) sales, which she claimed were comparable in terms of chronological and effective age, lot size, living area, room count, and certain amenities. All were located within the Township, and their sales occurred as of, or proximate to, the assessment date of October 1, 2016. Those sales were as follows:

|   | Address | Built | Lot Size | GLA | Sale Date | Sale Price | Room Count | Other |
|---|---------|-------|----------|-----|-----------|------------|------------|-------|
| 1 | 1107 Raymere Ave | 1948 | 50x101 | 1,116 SF | 10/11/16 | $220,000 | 3 bed; 2 bath | |
| 2 | 1306 Franklin Pkwy | 1948 | 50x100 | 1,292 SF | 08/05/16 | $221,500 | 3 bed; 2 bath | Basement |
| 3 | 1319 Birch Ave | 1948 | 50x100 | 1,152 SF | 09/12/16 | $245,000 | 3 bed; 1 bath | Basement |
| 4 | 1303 Turner Ave | 1948 | 50x92 | 1,476 SF | 03/18/16 | $285,000 | 3 bed; 2 bath | Basement; det. garage |

The data sources plaintiff relied upon were: (1) the County Board's website (njactb.org), which provides a web version of a property record card, along with the basic physical characteristics of the property, such as year built, size, and sale details (parties to sale; date of sale; purchase price; non-usable ("NU") category, if any); (2) the property record cards maintained at the assessor's office; (3) information from the Multiple Listing Services ("MLS"); and (4) excerpts from the Handbook for New Jersey Assessors as to information on building classification codes and cost per square foot ("PSF") in this connection. Plaintiff maintained that comparable one was most like the Subject, however, she considered the unadjusted sale prices of all four sales to arrive at the conclusion that the Subject's value is $240,000.

**FINDINGS**

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that are properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

The market approach (or using comparable sales) is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

Plaintiff argues that the incorrectness of the Subject's assessment is evident, not only based on the unadjusted sale prices of the four comparables, but also because: (1) the residence was erroneously classified as 16. Such classification is, per the Assessor's Manual, for residences which typically have 2½ bathrooms, whereas the Subject only has two bathrooms. Using Class 15 would greatly reduce the PSF cost, since the Assessor's manual reflected a difference of $10 PSF between a Class 16 and Class 15 residence. Thus, classifying her residence as Class 16 shows that the assessment is incorrect regardless of the fact that the assessor provided a negative

3

adjustment of $1,895 for the lack of a half-bath in the Subject; and (2) the assignment of an effective age of 35 to the Subject was wrong. She maintained that she made no substantial improvements to the Subject since her purchase, except for, replacement of the entire siding and installing an above-ground pool, therefore, a 1948 chronological age cannot possibly be 35 years young, effectively. This wrong effective age, in turn, rendered the physical depreciation factor of 39% used on the Subject's property record card (which used a cost approach) erroneous.

Plaintiff's comparables are comparable in terms of lot size, age, location and proximity to the assessment date. However, their unadjusted sales price do not provide a reliable value indicator for the Subject. Value is not a rough average of the unadjusted sale prices of relatively similar type homes, and valuation is not a mathematical exercise. Amenities present or absent in a comparable may or may not add value to that property. Here, for example, comparable one lacked a basement, while comparable two allegedly had a full unfinished basement. However, the reason for the difference in the sale price of $1,500 is uncertain. It may or may not have been attributable to the basement, since comparable two also had about 100+ SF of additional GLA. If attributable to the larger GLA, then the Subject's value would be higher than the sale price of comparable one (which per plaintiff is the most similar to the Subject), due the Subject's larger GLA (1,305 SF versus 1,116 SF). Again, the bathroom count could make a difference and it could cause properties with additional bathrooms to have a higher value or vice-versa (such as in comparable 3). Thus, the unadjusted sale prices of comparables would not provide credible value indicators.

It should be noted that plaintiff did not provide any photographs of the exterior or interior of the Subject or of the comparables. Further, she had not inspected the interiors of any of the comparables. Her alleged reliance upon the inspection, which she presumed was conducted by an inspector for the Township or revaluation company, the results of which, she stated, were reflected

4

on the property record card, cannot substitute for her own inspection and proof of the same (via photographs) to this court. Again, the condition of amenities in the comparables may or may not have driven the sale prices. Presuming they are all in the same condition (thus, their sale prices do not require any adjustments), is not competent or credible evidence. Indeed, the City provided MLS listings of comparables one and two, which noted that the properties required repairs and/or maintenance (comparable one needed "some TLC" while comparable two had "good bones, but is in need of updating"). While plaintiff is correct that MLS listings are primarily advertisement mechanisms, and contain a caveat that the information while "reliable" is not "guaranteed," therefore, the City's use of them should be discredited, these comparables are the same ones plaintiff relies on. It is her burden to prove that their condition is similar to that of the Subject's. It is not the City's burden, although the City is rightfully permitted to cross-examine plaintiff as to her own comparables. Without a personal inspection, or even an attempt to obtain information from the realtor with whom she discussed the comparables, discrediting the MLS listings descriptions does not validate or make credible her presumption that the comparables were of the same alleged condition as the Subject.

Plaintiff also had not personally verified the circumstances of the sale for any comparable, but relied upon the lack of an NU category on the County Board's website as to each sale. Her reliance does not circumvent the obligation to ensure that the sale was an arms-length one, such that neither the buyer nor seller is under a compulsion to buy or sell. As explained by this court, "[v]ital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to 'better understand the attitudes and motivations of the buyer and seller.'" VBV Realty, L.L.C. v. Township of Scotch Plains, 29 N.J. Tax 548, 564 (Tax 2017) (citation and quotation marks

omitted) (rejecting a real estate appraiser's comparable sales because the expert relied on the sales information posted on the above-referenced County Board's website, MLS listings, and from his discussions with the tax assessors). The VBV court also noted that the County Board's website contained an explicit disclaimer that the website's information is "not warranted or guaranteed in any way," especially as to "the accuracy, adequacy, quality, currentness, validity, completeness, or suitability of any data for any purpose." Id. at 563 (website address omitted). See also N.J.S.A. 2A:83-1 (a witness providing testimony relating to comparable sales should obtain information from the "owner, seller, purchaser, lessee or occupant . . . or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales").

Indeed, as pointed out by the City, the MLS listing for comparable three noted that the property was an "approved short sale," thus, the terms of the sale was "subject to 3rd party approval." Additionally, the sale was "as is" with any responsibility for the "CO repairs" passed on to the buyer. Short sales are generally viewed as one where the seller is under duress since it is not uncommon for the seller to be delinquent on the mortgage, and the bank or mortgage lender is threatening foreclosure or may have even acquired the property through foreclosure, and is seeking to be made whole on the defaulted mortgage obligation. Without full inquiry and investigation into whether such a sale is truly arms-length, the court should hesitate to use it as a comparable.

Plaintiff argues that the notations on the MLS are unreliable since MLS listings are, in essence, advertisements. However, notice of the sale being a short sale requiring third-party approval is not advertisement of the property's physically or ethereally attractive features. It is merely a fact being disclosed. Again, it is incumbent upon plaintiff, who used this sale as her

6

comparable to prove that the sale is a credible indicator of the Subject's value. To do so, she must provide competent proof.[3]

In sum, plaintiff's value conclusion based on the unadjusted sales of four comparables, one of which is a short sale, is not credible since it is not based on competent or cogent evidence.

Plaintiff's arguments that the building's allegedly erroneous building classification or effective age <u>vis-à-vis</u> wrong depreciation rate, casts doubt as to the assessment's correctness, is not unreasonable. However, they simply do not assist the court in arriving at the Subject's value. First, plaintiff did not employ a cost approach to valuation. Second, she did not proffer herself as an expert, while acknowledging that she is knowledgeable about real estate appraisal, due to her qualification as a certified tax assessor and a licensed real estate appraiser. Her lay opinion as to what the effective age should be does not merit consideration especially given the total lack of pictures of the Subject (interior or exterior).

The court is mindful that it must strive to find value. However, as stated in <u>Township of Warren v. Suffness</u>, 225 <u>N.J. Super.</u> 399, 413-414 (App. Div. 1988), "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." (citation and quotation marks omitted). Thus, the court cannot "arbitrarily assign a value to the property not supported in the record." <u>Ibid.</u> (citation and quotation marks omitted). Here, there was no such credible evidence for the court to independently conclude the Subject's value. Providing a list of comparable sales with unadjusted

---

[3] Of course, if plaintiff shows the court with credible evidence that the sale was verified as being at arms-length despite the existence of any factors indicating or implying a non-market sale, the City cannot simply rest on an opposition that the sale is unreliable because it was treated as NU in developing the Chapter 123 ratios. <u>See</u> <u>Greenblatt v. City of Englewood</u>, 26 <u>N.J. Tax</u> 41, 54 (Tax 2010) ("[s]imply saying that a sale was determined by the assessor to be non-useable for purposes of the Director's sales ratio study does not render the sale non-useable for valuation purposes."). But plaintiff must first satisfy this court of the sale's reliability. Here, this was not done.

sale prices, and asking the court to reduce the assessed value of the Subject to a number that is somewhat the average of such sale prices, does not meet a taxpayer's burden of providing "sufficient competent evidence of true value of the (subject) property." See Siegfried O. v. Township of Holmdel, 20 N.J. Tax 8, 20 (Tax 2002) (citation and quotation marks omitted).

## CONCLUSION

For the aforementioned reasons, the court finds that plaintiff has failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.

8