**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2542-16T2

MIBAR, LLC,

    Plaintiff-Appellant,

v.

ELIZABETH CITY,

    Defendant-Respondent.

_____

Submitted January 24, 2018 — Decided July 10, 2018

Before Judges Alvarez and Nugent.

On appeal from the Tax Court of New Jersey,
Docket No. 014691-2013.

Schneck Law Group, LLC, attorneys for
appellant (Michael I. Schneck, on the briefs).

Blau & Blau, attorneys for respondent (Robert
D. Blau, on the brief).

PER CURIAM

    Plaintiff, Mibar, LLC, challenges the 2013 property tax assessment of its commercial property in Elizabeth City ("plaintiff's property" or "the property"). After unsuccessfully challenging the original assessment of $100,000 — $68,600 for the

land and $31,400 for improvements — before the Union County Board of Taxation, plaintiff filed a complaint with the Tax Court seeking review of the Tax Board's judgment. The Tax Court affirmed the assessment. In doing so, the court made material findings of fact that were unsupported by the record. For that reason, we reverse the Tax Court judgment and remand for a new trial.

During the trial, plaintiff's expert, a State Certified General Real Estate Appraiser, described plaintiff's property as a 2040 square foot, freestanding fast food facility situated on a .2 acre corner lot in a "good retail strip." The property is "headed by a Dunkin Donuts." The interior finish is typical of a fast food or Dunkin Donuts facility with tiled floors, drywalls, and suspended ceiling. It is heated and air conditioned by forced hot air and a central air conditioning system. The expert opined the best use of the property was a fast food facility.

The expert also opined the income approach was the most appropriate for appraising the property. In order to provide an estimate of the property based on an income approach, the expert employed the following methodology. First, he determined the market income plaintiff's property would produce as of October 1 of the pre-tax year. Next, he computed deductions based on vacancy and credit loss. He then made adjustments for the property owner's expenses: management fees, leasing commissions, and a reserve for

replacement over time of structural components.  Last, the expert derived a ratio known as the capitalization rate, which he explained was "a rate that converts net income to an indication of market value."

To estimate the property's market income, the expert analyzed five "comparable rentals of similar typed properties."  Two of the comparables were from other counties.  The three comparables in Union County included one fast food facility in Scotch Plains and two fast food facilities in the same shopping center in New Providence.

Because the Union County comparables were newer than plaintiff's property, the expert made a downward "quality adjustment" concerning plaintiff's property of 7.5 percent.  The expert made no other adjustments concerning plaintiff's property. He concluded the market rent for plaintiff's 2040 square foot property was thirty dollars per square foot for a potential gross income of $61,200.  Deducting expenses resulted in a net income of $47,920.  The expert derived a capitalization rate of 7.8 percent, which, when applied to the net income, resulted in a market value of $614,358.  The expert rounded this value to $614,000.  Thus, the expert concluded plaintiff's property's market value as of October 1, 2012, the pre-tax year, was $614,000.

The tax assessment on a property of that value was $82,000, $18,000 less than the $100,000 Board of Taxation judgment.

Following cross-examination, during re-direct, the expert testified there was no difference in value between a standalone facility and similar attached facilities in strip malls, at least with respect to fast food facilities. He explained that because fast food establishments are generally small facilities, there is "no difference in the standalone or attached units."

The court asked the expert about the basis for this opinion. The expert explained he based his opinion on his analysis of standalone rentals of fast foods. He also explained the subject property, though a standalone, was on a very small corner of a very small lot. In addition, the lot is adjacent to a neighborhood shopping center so if one did not look closely one would assume the property was part of the shopping center. The expert added:

> [S]o it's not to say there may not be a single tenanted standalone fast food somewhere that would garner a higher rental for a number of reasons, including location and . . . other things. But in consideration of this particular subject property and its physical characteristics in comparison to the comparable rentals I used . . . very, very comparable and [I] don't think an adjustment at all would be required for being standalone or not.

The expert also opined "the draw of the neighborhood shopping center component more than balances out any corner location that

the subject [property] would have on a . . . tertiary commercial road."

With three exceptions, the Tax Court accepted the expert's testimony. First, the court disregarded the two comparables outside Union County because they were "not necessarily indicative of the fair market value of the fast food restaurant within the Union County corridors."

Next, the court rejected the expert's 7.5 percent quality adjustment on one of the remaining comparables. It explained:

> The court has some familiarity with that subject property from other tax appeal matters and does not find . . . based upon the testimony of the appraiser . . . nor looking at the pictures that were presented before the court . . . that that subject property warrants a superior quality adjustment of 7.5 percent.

Last, the court determined a standalone establishment warranted a higher rental value than fast food restaurants that did not stand alone. The court explained:

> [T]he court has some concerns based on the court's knowledge that . . . generally in the fast food marketplace in certain fast food vendors[,] . . . a standalone establishment warrants a higher rental value. And, thus, the court is going to apply a [five] percent adjustment upwards to [the Union County] comparable rental[s] . . . to account for what the court has knowledge of as the fact that . . . that the subject property is a standalone property, and [the Union County] comparable rentals . . . are not standalone properties,

and that in the marketplace certain vendors and certain lessees require standing fast food marketplace . . . because of its visibility and specifically the visibility of this subject property on a corner lot.

As a result of the adjustments it made, the court determined thirty-two dollars per square foot was an appropriate value for plaintiff's property. Thus, under the court's analysis, the net operating income for the property was $51,114. The court accepted plaintiff's appraiser's capitalization rate. Applying the capitalization rate to the court's determination of net operating income resulted in a market value of plaintiff's property of $655,300 as of October 1, 2012. The court explained:

> The subject property's assessment for the 2013 year was $100,000. Thus, the mathematical formula . . . involves taking the $100,000 assessment, dividing it by the $655,300 value, which determines the ratio of .1526 for the subject property. Taking the determined fair market value[,] . . . the ratio is determined by applying the assessment to the . . . court's determined fair market value, the court concludes that the .1526 falls within the lower and upper limits established by . . . the City of Elizabeth for the 2013 tax year, the lower limit being 11.35 percent, the upper limit being 15.35 percent.

The court thus concluded plaintiff was not entitled to relief. Plaintiff appealed from the order the judge entered following his decision.

6

On appeal, plaintiff argues that when the court rejected the expert's 7.5 percent negative adjustment for one of the comparables, the judge relied upon facts outside the record. Plaintiff also argues when the judge relied upon his "knowledge that . . . generally in the fast food market place and certain fast food vendors . . . a standalone establishment warrants a higher rental value," it did so without any evidentiary support in the record. Last, plaintiff contends the City of Elizabeth's attorney's conduct prejudiced plaintiff at trial when the attorney questioned the expert based on assumed facts not in evidence and repeatedly referred to evidence not in the record. According to plaintiff, the cumulative violation of the Rules of Evidence warrants reversal of the tax court's judgment.

The City of Elizabeth counters there is substantial evidence in the record to support the tax court's determination of market value. The City asserts the judge's five percent upward adjustment because plaintiff's property was a standalone facility was properly based on the judge's experience and knowledge. In fact, the City asserts, if the judge had a subjective belief an adjustment was necessary, the judge was duty bound to make the appropriate judgment. The City contends no conduct on the part of the City's attorney prejudiced plaintiff.

An appellate court's review of a Tax Court decision is deferential. Estate of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011). This is because "judges presiding in the Tax Court have special expertise." Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990). Thus, a "[t]ax [c]ourt judge's findings will not be disturbed unless we conclude they are arbitrary or lack substantial evidential support in the record." UPSCO v. Dir., Div. of Taxation, 430 N.J. Super. 1, 7-8 (App. Div. 2013) (citing Yilmaz, Inc. v. Dir. Div. of Taxation, 390 N.J. Super. 435, 443 (App. Div. 2007)). In contrast, we review a Tax Court's legal determinations de novo. Id. at 8.

"The Tax Court has the duty to apply its own judgment to valuation data submitted by experts in order to arrive at true value." Glenpointe Assoc., 241 N.J. Super. at 46 (citing Warren Tp. v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988)). Nonetheless, a "Tax Court's right to make an independent assessment is not boundless; it must be based on evidence before it and data that are properly at its disposal." Ibid. (citing F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985)). A Tax Court "must not arbitrarily assign a value to the property which is not supported in the record." Ibid. (citing Warren Tp., 225 N.J. Super. at 414).

Here, the Tax Court judge made a determination based on his "knowledge that . . . generally in the fast food market place ... a standalone establishment warrants a higher rental value." Based on that general proposition, and without any evidence in the record to support either it or its application to the particular facts before it, the Tax Court applied a five percent upward adjustment to the Union County comparables.

Likewise, the court appeared to rely on its own familiarity with a comparable and rejected a 7.5 percent quality adjustment for the comparable. Although the court also referenced photographs in the record, it is not clear the court would have made the same determination without applying its personal assessment of the property.

Although the Tax Court had the right to reject plaintiff's expert's opinion, and though the court — as defendant suggests — had the duty to apply its own judgment to valuation data submitted by the expert — the court did not have the right to make an independent assessment devoid of evidentiary support. For that reason, we reverse the Tax Court judgment and remand for a new trial.

In view of our disposition of these arguments, we need not address plaintiff's argument that counsel for the City referred to evidence not before the court. Certainly, such references are

unlikely to affect a court's decision, but we presume, as in any case, that during the remand hearing all counsel will confine themselves to presenting a case based on the evidence properly admitted during the hearing.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2542-16T2