**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



**MALA SUNDAR**
**JUDGE**

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

January 31, 2020
(Amended to change "Township" to "Borough" on pp. 2, 3)

Anthony Paolo & Patricia Miliano-Paolo
Self-Represented
Bradley Beach, New Jersey 07720

Gregory Pasquale, Esq.
Shain Schaffer, P.C.
Bernardsville, New Jersey 07924

> Re:     Paolo v. Borough of Bradley Beach
>          <u>Docket No. 008800-2019</u>

Dear Mr. Paolo and Counsel:

This letter constitutes the court's decision following trial of the above-captioned matter.

Plaintiffs own a residence, located at Block 79, Lot 14 ("Subject"), in defendant taxing district

("Borough").  They petitioned the Monmouth County Board of Taxation ("County Board"), to

reduce the Subject's tax year 2019 local property tax assessment of $657,700 (allocated $584,800

to land and $72,900 to improvements) to $563,000 based on the sales prices of three residences

in the Borough.  The County Board affirmed the assessment using Judgement Code 2B

(presumption of correctness not overturned), which plaintiffs timely appealed to this court.

Plaintiff, Mr. Paolo, appeared for trial and provided testimony as to the description of the

Subject and his comparable sales.  The Subject is a one-story, single-family residence built in

1983, with 1,836 square feet ("SF") of gross living area ("GLA"), situated on a 75x127 SF lot,

which plaintiffs purchased in 1996.  The contemporary-style house has two bedrooms, one full






and one half-bath. There is no basement, the house being on a concrete slab. Nor is there a deck, porch, or pool. There is also no garage or driveway, plaintiffs having to use street parking. The house is well-maintained. No significant renovations have been undertaken, although plaintiffs have replaced the roof and heating system. All other repairs/changes made were routine maintenance items. The copies of photographs of the house show it as being in good condition (exterior and interior), with the kitchen having modern appliances, granite counters, and an island, with French doors leading into the adjacent living space beyond the attached dining area.

Mr. Paolo testified that there were two major characteristics of the Subject that significantly reduce the buyer pool. One is that the house has only two bedrooms, since it is common knowledge that the more bedrooms, the greater the buyer pool. The other is the lack of a garage or driveway. Street parking is problematic, especially in the summer when beachgoers take advantage of the unmetered parking in the street along the Subject.

Mr. Paolo relied heavily upon the sales price of one comparable as the best indicator of the Subject's value: 426 Monmouth Avenue, which sold for $575,000 on October 13, 2017, and is located around the block from the Subject.[1] This was a ranch-style, single-family residence, on a 50x128 SF lot, built in 1924, with a GLA of 1,515 SF. Per Mr. Paolo, the comparable had three bedrooms and a three-car driveway. The Borough's assessor's comments were as follows: "ranch on same block; smaller; needs updating (subject better cond) only one bath." Also noted was that the comparable had three bedrooms, a deck, and "3 space parking, partial basement."

---

[1] Plaintiffs had listed this same comparable, with two others, for purposes of their petition before the County Board, and used the same three sales as evidence of the Subject's value in the Tax Court. Their complaint also included a document titled "Appeals Review Summary," which the Borough had provided to them for purposes of the County Board hearing, and which included this same comparable (426 Monmouth Avenue) in the portion titled "Assessor Comparables." The columns in this portion contained information as to the comparables' location, block/lot, sale date, sales price, lot size, year built, GLA, price per-SF, and the assessor's "Comments."

The notes also indicate that the property was listed at $639,000 on "7/24"; then reduced to $595,000 on "8/1"; then sold "12/15/17" for $575,000.[2] Plaintiffs had not reviewed the sale deed, or verified the sale in any manner; however, the <mark>Borough</mark> agreed that the sale did not have a non-usable code attached to it.

Plaintiffs' two other comparables were located at 28 Atlantic Avenue (which sold on 11/13/2018 for $586,000 after it was listed on 8/24/2018 for $599,000) and 501½ McCabe Avenue (which sold for $531,000 on 4/18/2018 but had been listed on 2/13/2018 for $525,000). Both homes had smaller GLAs (1,024 SF and 1,404 SF, respectively), smaller lot sizes (33x100 SF and 25x100 SF, respectively), and were older (1914 and 1934, respectively). However, per Mr. Paolo, 28 Atlantic Avenue had an extra bedroom and a driveway, while 501½ McCabe Avenue had a garage.

Mr. Paolo strenuously maintained that the best indicator of the Subject's value is 426 Monmouth Avenue due to its proximity to the Subject. This one sale, he stated, clearly shows that the Subject is over-assessed. He had not personally inspected the interior, but he testified, homes in the <mark>Borough</mark> are old but well-maintained, thus in excellent condition. Mr. Paolo claimed to have viewed the interior of the comparable on the internet (posted on zillow.com) and that those pictures represented the actual condition. The court was not provided with any web photographs.

Mr. Paolo asked that the Subject's assessment be reduced to a number closer to the $575,000 sales price of the comparable at 426 Monmouth Avenue (or to $563,000, which he had sought at the County Board). He agreed that the Subject was superior in terms of lot size and

---

[2] The County Board's webpage (www.njactb.com) as to the comparable indicates "Listed for $639,000 on 7-23-17." The deed date is shown as 10/13/17, and the deed's recording date is shown as 12/15/17.

GLA; however, he maintained, these features were more than offset by the comparable's superior features: a three-car driveway and the extra bedroom. These two features, per Mr. Paolo, is what attracts a larger pool of buyers, and the lack of these two features is what restricts the Subject's potential buyer pool.

**ANALYSIS**

It is the plaintiffs' burden to persuade this court, with credible, objective evidence, why the Subject is over-assessed and what is, or should be, the Subject's value. Generally, for residential properties, a comparable sales analysis is used to determine value. Here, plaintiffs provided a list of three comparable sales of single-family residences, all in the Borough, and two sales were closer to the assessment date. However, they relied upon only one comparable, 426 Monmouth Avenue, as evidence of the Subject's value.

The court is unpersuaded that the Subject's value is directly determinable from only the sales price of 426 Monmouth Avenue. One red flag is the rapid and steep reduction from the listing price to the sales price. While the sale did not have a non-usable code, this absence does not necessarily mean that the sale was at arm's-length, where the seller is not pressured to sell, and the buyer not pressured to buy. This rapid and steep price reduction is a circumstance where verification of the sale becomes important. Such verification could show that the price was rapidly and sharply reduced because the market was at that time dictating a lower price (note that the sale occurred one year before the applicable valuation date, October 1, 2018). Conversely, it could show that the seller wanted to sell quickly due to certain non-market influenced reasons. See, e.g., The Appraisal Institute, Appraisal of Real Estate, 410 (14th ed. 2013) ("A sale may be transacted at below-market price if the seller needs cash in a hurry"). The Multiple Listing

Service (MLS) summary sheet (with which the court was not provided), and the website zillow.com, may or may not reflect these types of circumstances.

Therefore, verification of the sale details is important. Ibid. (if "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care"; thus, the "circumstances of the sale must be thoroughly researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable). See also Glen Wall Assocs. v. Township of Wall, 99 N.J. 265, 282 (1985) (court must "appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value"). Plaintiffs must provide the requisite proof in this regard. Cf. N.J.S.A. 2A:83-1 (authorizing testimony on comparable sales when verified from the "owner, seller, purchaser, lessee or occupant . . . or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales").

Note that the responsibility to verify the conditions or circumstances of a sale is not just upon plaintiffs but upon any party (including such party's expert, if any) proffering such sale as evidence. See VBV Realty, LLC v. Township of Scotch Plains, 29 N.J. Tax 548, 564 (Tax 2017) ("[v]ital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to better understand the attitudes and motivations of the buyer and seller") (citation and quotation marks omitted) (rejecting comparable sales because the expert relied on sales information posted on a County Board's website, MLS listings, and from his discussions with the tax assessors). That the Borough listed this sale in defending its assessment during the County Board hearing

5

does not mean that this court will automatically accept the sale as credible evidence of the Subject's value, especially when neither party offered any explanation as to the sale.

The second issue is how much of a dollar adjustment the court should make to the comparable's sales price of $575,000. One cannot simply conclude that the value of the superior features in the comparable (extra bedroom, deck, driveway parking) offset the value of the Subject's superior features (larger lot size, larger GLA, extra one-half bath, contemporary style). This would require an assumption that each offsetting feature (or the total) is of the same value to a potential buyer. The court cannot make such a "naked" assumption. Cf. WCI-Westinghouse, Inc. v. Township of Edison, 7 N.J. Tax 610, 621-23 (Tax 1985), aff'd, 9 N.J. Tax 86, 87 (App. Div. 1986) (rejecting an expert's net or lumpsum adjustment with no separate adjustment for individual differences as being unreliable appraisal practice).

Adjustments must be objective, market-based, and data-driven (such as reliable costs to build, adjusted sales prices of vacant lots, value of GLA per-SF based on an abstraction method and the like). An absence of the same forecloses the court from deciding the appropriate adjustment amount. See, e.g., American Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 581 (Tax 1998) ("without . . . adjustments [to the comparables' sales prices], the sales provide no meaningful indication of the value of the subject property"), aff'd, 19 N.J. Tax 46 (App. Div. 2000).[3]

---

[3] This same concern applies to plaintiffs' other two comparables. It is true that Mr. Paolo insisted that the only comparable he relied on is 426 Monmouth Avenue. However, generally, one sale is insufficient to conclude a credible value determination because it cannot reasonably be considered as representative of the general or entire market. "Until a sufficient number of samplings have been examined to establish a definite trend from which a reasonable conclusion can be drawn," it is generally not possible to determine the "fair value of" the subject property. Lorenc v. Township of Bernards, 5 N.J. Tax 39, 49 (Tax 1982).

In sum, plaintiffs' reliance upon the unadjusted sales price of one comparable due to its proximity to the Subject, and somewhat similar lot size, is not persuasive evidence of the Subject's true value. Without more, plaintiffs' demand that the court reduce the Subject's assessment to a number closer to the comparable's sales price does not meet a taxpayer's burden of providing "sufficient competent evidence of true value of the (subject) property." See Siegfried O. v. Township of Holmdel, 20 N.J. Tax 8, 20 (Tax 2002).

The court is mindful that it must strive to find value. However, "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." Township of Warren v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988) (citation and quotation marks omitted). Thus, the court cannot "arbitrarily assign a value to the property not supported in the record." Ibid. (citation and quotation marks omitted). Here, there was no such credible evidence for the court to independently conclude the Subject's value.

## CONCLUSION

For the above reasons, the court finds that plaintiffs have failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.